Emily Catherine **MIKSCH**, Appellant,

v.

**EXXON CORPORATION d/b/a Exxon Company U.S.A.**, Appellee.

No. 14–96–01495–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Sept. 10, 1998.

Rehearing Overruled Dec. 10, 1998.

Opinion Concurring in Overruling of Rehearing Dec. 17, 1998.

G. Allen Price, Michael A. McLaughlin, Houston, for appellants.

Mark Schwartz, Anne Gibson, Douglas B. Neagli, Houston, for appellees.

Before LEE, ANDERSON and EDELMAN, JJ.

## OPINION

LEE, Justice.

This is a wrongful termination case in which Emily Catherine Miksch sued Exxon Corporation d/b/a Exxon Company U.S.A. ("Exxon") for allegedly firing her in violation of the parties' oral employment agreement. The trial court granted summary judgment in Exxon's favor, and Miksch perfected this appeal. We affirm in part and reverse and remand in part.

### Background

In 1983, Miksch was employed as a secretary in the Real Estate and Engineering Division of Exxon's marketing department. Her supervisor at the time, Renny Mize, was Exxon's "Real Estate Manager for the Western Zone." In 1987, Miksch's husband began investigating the possibility of leasing and operating a Chevron service station located on 43rd Street in Houston, Texas (the "43rd Street Chevron"). At that time, Exxon had a written conflicts of interest policy prohibiting an employee or an employee's spouse from competing with Exxon without first obtaining

the company's approval. Specifically, the policy provided, in pertinent part:

> An employee, an employee's spouse, or a dependent member of any employee's family may not compete with the Company or its affiliates through outside business activities, **except** with the knowledge and consent of management.

Miksch was aware of the above policy and was concerned that her husband's business plan would jeopardize her employment with Exxon. Shortly thereafter, Miksch discussed the situation with Mize and asked him whether her husband's operation of the 43rd Street Chevron would threaten her position with the company. Mize purportedly[1] told Miksch the venture "would not be a problem at all," and Miksch relayed this information to her husband. Miksch's husband subsequently leased and began operating the 43rd Street Chevron. The following month, Miksch received a promotion and was assigned to a new supervisor, Dan Stevens. Stevens was supervised by Mike Rollins, who in turn, was supervised by Exxon's Marketing Department head, Gordon Thomson.

In August of 1994, Exxon revised its conflicts of interest policy to provide that all conflicts of interest must be approved by a member of the company's "senior management." The revised policy defined "senior management" as "department heads or higher level executives." In December of the same year, Stevens informed Miksch that she was in violation of Exxon's policy and that in order to continue working for the company, Miksch's husband would have to relinquish control of the 43rd Street Chevron. Miksch and her husband refused, and shortly thereafter, Exxon terminated Miksch's employment.[2]

Miksch subsequently filed a wrongful termination suit against Exxon, and Exxon moved for summary judgment on all of Miksch's claims. Following a hearing, the trial court granted summary judgment in favor of Exxon without stating its basis for doing so. Miksch brings one point of error complaining generally that the trial court erred in granting summary judgment against her.[3]

## Standard of Review

The standard we follow when reviewing a summary judgment is well-rehearsed. Summary judgment is proper only when the movant establishes there are no genuine issues of material fact and proves he is entitled to judgment as a matter of law. *See* TEX.R.CIV.P . 166a(c). To be entitled to summary judgment, a defendant must either (1) conclusively negate at least one essential element of each of the plaintiff's causes of action, or (2) conclusively establish each element of an affirmative defense to each claim. *See American Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 425 (Tex.1997). In deciding whether there exists a disputed fact issue precluding summary judgment, we treat evidence favorable to the nonmovant as true and indulge all reasonable inferences in the nonmovant's favor. *See id.* A summary judgment may be affirmed on any of the movant's theories that has merit. *See Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 627 (Tex.1996).

## Claims Against Exxon

Miksch alleged causes of action against Exxon for breach of contract, common-law fraud, negligent misrepresentation, and "waiver of right to terminate."[4] Exxon

---

1. Mize is now deceased and did not testify as to this conversation before his death.

2. At the time Miksch was fired, her husband had also acquired certain interests in the operation of two more service stations. However, the parties eventually negotiated an agreement whereby Miksch's husband's limited interests in these stations would not violate Exxon's conflicts of interest policy. It is therefore undisputed that Miksch was fired for the sole reason that she and her husband refused to relinquish control of the 43rd Street Chevron.

3. This single, broad point is sufficient to preserve error and allow argument as to all possible grounds upon which summary judgment may have been granted. *See Plexchem Intern., Inc. v. Harris County Appraisal Dist.*, 922 S.W.2d 930, 930–31 (Tex.1996) (citing *Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex.1970)).

4. Miksch also asserted a claim for the intentional infliction of emotional distress, which she abandoned shortly before summary judgment was granted.

contends the trial court properly granted its motion for summary judgment because there are no fact issues as to any of Miksch's claims. We will address each of Miksch's arguments challenging summary judgment in the order they appear in her brief.

### Breach of Contract

■ Exxon's first ground for summary judgment was that Miksch's contract claim is barred by the doctrine of employment at-will. For more than a century, Texas has adhered to the rule of at-will employment, which provides that absent a specific agreement to the contrary, employment may be terminated by the employer or the employee at any time, for good cause, bad cause, or no cause at all. *See Federal Express Corp. v. Dutschmann,* 846 S.W.2d 282, 283 (Tex.1993) (per curiam); *East Line & R.R.R. Co. v. Scott,* 72 Tex. 70, 10 S.W. 99, 102 (1888).[5] The validity of an agreement purporting to limit an employer's right to discharge the employee at-will is governed by general contract principles. *See, e.g., Montgomery County Hosp. Dist. v. Brown,* 965 S.W.2d 501, 41 Tex.Sup.Ct.J. 537 (1998). For such an agreement to exist, the employer must unequivocally indicate a definite intent to be bound not to terminate the employee except under clearly specified circumstances. *See id.* In other words, to be enforceable, an agreement to modify the employment at-will relationship must be (1) expressed rather than implied, and (2) clear and specific. *See id.* (citing *Byars v. City of Austin,* 910 S.W.2d 520, 523 (Tex.App.—Austin 1995, writ denied)). Miksch recognizes that she was an at-will employee at Exxon, but claims her summary judgment proof raises a fact issue as to whether Mize's oral statements regarding her husband's opera-

tion of the 43rd Street Chevron modified her employment status.

In her affidavit attached to her response to Exxon's motion for summary judgment, Miksch detailed what occurred the day she spoke with Mize about her husband's plan to operate the 43rd Street Chevron station:

In May of 1987, I went into [Mize's] office specifically to discuss the conflict of interest situation. Mr. Mize, who was the manager of the Western Zone of the Real Estate and Engineering Division, was my supervisor at that time.... I told Mr. Mize the details I knew about the [43rd Street Chevron] and its location, which was near our home. I specifically asked Mr. Mize whether the leasing and operation of the Chevron dealership would pose any problem with my position at Exxon. Mr. Mize put down his pen and seemed to me to be thinking carefully and intently about what I said. *He then told me that the leasing and operation of the Chevron dealership would not be a problem at all.* I remember this well.... I also understood that [Mize] was speaking on behalf of Exxon when he told me that the leasing and operation of the Chevron dealership would not be a problem at all. I understood from my conversation with Mr. Mize that Exxon consented or agreed to the leasing and operation of the Chevron dealership and that Exxon would not object to any conflict of interest which would result from the leasing and operation of the Chevron dealership by my husband.

(emphasis added).

Relying on the above testimony, Miksch claims that Mize's oral assurance that her husband's operation of the 43rd Street Chevron "would not be a problem at all," was sufficient to form an agreement limiting Exx-

---

5. The Legislature has enacted several statutory exceptions to this general rule. *See, e.g.,* Tex Lab. Code Ann. § 21.051 (Vernon 1996) (discharge based on race, color, disability, religion, sex, national origin, or age); Tex Agric Code Ann. § 125.013(b) (Vernon 1995) (discharge for exercising rights under the Agricultural Hazard Communication Act); Tex.Civ Prac. & Rem Code Ann. § 122.001 (Vernon 1997) (discharge for serving jury duty); Tex.Elec Code Ann § 161.007 (Vernon Supp.1998) (discharge for attending political convention); Tex Gov't Code Ann. § 431.005–.006 (Vernon 1990) (discharge for military service); *Id.* § 554.002 (Vernon Supp.1994) (dis-

charge of public employee for reporting violation of law to appropriate authority); Tex.Rev Civ.Stat. Ann art. 4512.7, § 3 (Vernon 1998) (discharge for refusing to participate in an abortion); Tex Health & Safety Code Ann. § 502.013(c) (Vernon 1992) (discharge for exercising rights under the Hazard Communication Act); *Id.* § 592.015 (discharge due to mental retardation). The supreme court has also recognized one common-law exception to the employment at-will doctrine. *See Sabine Pilot Svc., Inc. v. Hauck,* 687 S.W.2d 733, 735 (Tex.1985) (holding that an employee may not be fired for refusing to commit a crime). None of those exceptions apply to the situation before us.

on's right to terminate Miksch at-will. As it did in its motion for summary judgment and supporting brief, Exxon argues Mize's statement could not have modified Miksch's at-will employment status because (1) Mize's statement was never reduced to writing, (2) Mize's statement was not clear, definite, or specific enough to be enforceable, and (3) Mize lacked the authority to unilaterally modify Miksch's at-will employment status.

To support its first argument, Exxon argues the *per se* rule in Texas is that an agreement to modify an employee's at-will status must be in writing. Recently, the Texas Supreme Court implicitly rejected Exxon's argument. *See Brown*, 965 S.W.2d 501, 41 Tex.Sup.Ct.J. 537. In *Brown*, the court granted writ of error specifically to consider whether an employer's *oral* statements were sufficient to modify the employee's at-will status. *See id.* Although the court ultimately concluded the employer's oral assurances were not specific enough to modify the appellant's at-will employment status, the court left open the possibility that such statements *could*, under certain circumstances, be sufficient to create an enforceable agreement. *See, e.g., id.* ("We hold that an employer's oral statements do not modify an employee's at-will status *absent a definite, stated intention to the contrary.*") (emphasis added).

Nevertheless, Exxon devotes a significant amount of time and cites several cases to support its contention that any agreement to modify the employment at-will relationship must be in writing. *See, e.g., Collins v. Allied Pharmacy Management, Inc.*, 871 S.W.2d 929, 932 (Tex.App.—Houston [14th Dist.] 1994, no writ); *Farrington v. Sysco Food Servs., Inc.* 865 S.W.2d 247, 252 (Tex. App.—Houston [1st Dist.] 1993, writ denied); *Wilhite v. H.E. Butt Co.*, 812 S.W.2d 1, 5 (Tex.App.—Corpus Christi 1991, no writ); *Winograd v. Willis*, 789 S.W.2d 307, 310 (Tex.App.—Houston [14th Dist.] 1990, writ denied); *Lumpkin v. H & C Communications, Inc.*, 755 S.W.2d 538, 539 (Tex.App.—Houston [1st Dist.] 1988, writ denied); *Stiver v. Texas Instruments, Inc.*, 750 S.W.2d 843, 846 (Tex.App.—Houston [14th Dist.] 1988, no writ); *Benoit v. Polysar Gulf Coast, Inc.*, 728 S.W.2d 403, 406 (Tex.App.—Beaumont 1987, writ ref'd n.r.e.); *Webber v. M.W. Kellogg Co.*, 720 S.W.2d 124, 127 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). We have carefully reviewed these cases and find they are either factually distinguishable from the case at bar or do not stand for the proposition Exxon claims.

For example, in *Stiver*, the employer had a company policy that *specifically required* any modification of employment agreements to be in writing and signed by a particular officer. *See* 750 S.W.2d at 845. Here, Exxon had no such policy. In *Collins*, the appellants were not permitted to argue on appeal that their at-will employment status was orally modified because they did not raise the issue in their summary judgment response. *See* 871 S.W.2d at 934. And, in *Lumpkin*, the appellant did not allege that his status as an at-will employee was modified by *any* express contract, written or oral. *See* 755 S.W.2d at 539. In this case, Miksch's pleadings and summary judgment response clearly and specifically allege that her at-will employment status was modified by Mize's oral assurance that she would not be fired because of her husband's interest in the 43rd Street Chevron.

The remainder of the cases Exxon cites simply do not support its position that every agreement to modify the employment at-will relationship must be in writing. These cases merely recognize that such an agreement must be in writing *if the particular employment contract, as modified, could not have been performed within one year. See, e.g., Winograd*, 789 S.W.2d at 310 (holding that written confirmation of the contract is unnecessary if the contract could be performed within one year); *Benoit*, 728 S.W.2d at 406 (same); *Webber*, 720 S.W.2d at 127 (same); *see also Brown*, 965 S.W.2d at 503, 41 Tex. Sup.Ct.J. at 539 (holding that employer's oral statements modifying employee's at-will status must be reduced to writing "only if the promises cannot be performed within one year").[6] In this case, it is undisputed that Miksch's alleged oral employment agreement

---

**6.** This writing requirement stems from the Statute of Frauds which provides that "an agreement which is not to be performed within one year from the date of making the agreement" must be in writing. *See Stiver*, 750 S.W.2d at 846 (citing Tex.Bus. & Com.Code Ann. § 26.01(a), (b)(6) (Vernon 1994)).

could have been performed within one year.[7] Thus, summary judgment could not have been granted based on Exxon's contention that the purported modification agreement was required to be in writing.

Exxon also argues that Mize's statement could not have modified Miksch's employment status because the statement is not clear, definite, or specific enough to be enforceable. As noted, the critical factor in determining the validity of an agreement to modify the at-will employment relationship is whether the employer has "unequivocally indicate[d] a definite intent to be bound not to terminate the employee except under clearly specified circumstances." *Id.* at 538. This is true because absent such an agreement, the employee cannot reasonably expect to limit the employer's right to terminate him. *See id.*

In *Brown*, the appellant argued her employer modified her at-will status by assuring her that as long as "[she] was doing a good job [she] would not be fired unless there was a good reason or good cause." *See id.* The court rejected the appellant's argument, holding that "general comments" that an employee will not be terminated as long as his work is satisfactory do not, in themselves, manifest a definite intent to be bound not to terminate the employee except under clearly specified circumstances. *See id.* In its analysis, the court emphasized the employer's promise that the appellant would not be terminated except for "good reason" or "good cause" was not definite enough to constitute an enforceable contract because there was no agreement or mutual understanding as to what those terms encompassed. *See id.*

Unlike the situation in *Brown*, Mize's statement to Miksch does not contain ambig-uous terminology or require one to speculate as to the parameters of the parties' purported agreement. The summary judgment proof shows Miksch specifically asked Mize whether her husband's plan to lease and operate the 43rd Street Chevron would threaten her position with Exxon. Mize's response is specific and definite, and when viewed in its proper context, communicates the clear message that Miksch would not be fired for what ordinarily would have violated Exxon's conflicts policy. Accordingly, we cannot conclude that Mize's statement was, as a matter of law, insufficient to modify Miksch's at-will employment status.[8]

■ Exxon next argues that even if Mize's statement was sufficiently clear, he lacked the authority to modify Miksch's at-will status. To support this assertion, Exxon attached its 1994 conflicts of interest policy to its motion for summary judgment. That policy specifically prohibits employees from competing with Exxon except with the knowledge and consent of "senior management." The policy defines "senior management" as "department heads or higher level executives." Exxon points out that in her deposition, Miksch conceded that Mize was neither a "department head" nor a "higher level executive" and that she had never sought "senior management" approval for her husband's business activities. Exxon argues this summary judgment proof conclusively establishes its position that Mize lacked the authority to bind Exxon to any agreement not to terminate Miksch's employment. We disagree.

It is undisputed that at the time the conversation between Miksch and Mize allegedly occurred, the 1994 conflicts of interest policy was not in effect. Exxon's conflicts of interest policy in effect at the relevant time only required employees to obtain the consent of

7. This is true because even under Miksch's theory that Mize's oral statements modified her at-will employment status, Exxon could have fired her at any time and for any reason (except for her husband's operation of the 43rd Street Chevron).

8. Exxon argues Mize's statement was not sufficiently clear because Mize did not *specifically* state that Miksch would not be fired for her husband's operation of the 43rd Street Chevron. We agree with Exxon that the issue would be much less complicated had Mize answered Miksch's question as follows: "It would not be a problem at all if your husband opens a Chevron station and becomes a Chevron dealer. It will not pose a problem with your position here at Exxon." We do not, however, read *Brown* to suggest that an employer must utter certain "magic words" in order to agree to limit its right to terminate the employee at-will. Rather, our task is to determine whether the employer's oral statement evidences a definite intent not to terminate the employee except under clearly specified circumstances. *See Brown*, 965 S.W.2d 501, 41 Tex.Sup.Ct.J. at 538. In this case, we find a fact issue exists as to whether Mize's response, when read in context, raises such an issue.

"management" before engaging in a competing business. The 1987 policy did not define the term "management" and Exxon has neither cited, nor have we found, any summary judgment proof suggesting that Mize was not part of the company's "management" as defined in the 1987 policy. Apart from this, Terry Rothwell, an Exxon executive, testified that based upon his reading of the 1987 policy, Miksch had complied with its terms and discharged her obligation to report her husband's business activity. Based on this record, we have no basis to conclude the summary judgment proof conclusively establishes Exxon's argument that Mize lacked the authority to act on the company's behalf. Accordingly, summary judgment would be inappropriate on this ground.

### Fraud

Exxon also moved for summary judgment on the ground that Miksch's common-law fraud claim is barred because her fraud allegation is nothing more than a repackaged breach of contract claim.[9] Although Miksch contends summary judgment was inappropriate because there are unresolved fact issues relating to her fraud claim, she has not specified what those fact issues are or provided any argument as to why they are fact issues. The Texas Rules of Appellate Procedure require each party's brief of the argument to contain "such discussion of the facts and authorities relied upon as may be requisite to maintain the point at issue." See TEX.R.APP.P. 38.1(h). Points of error that are not supported by argument and authorities are deemed waived. See Trenholm v. Ratcliff, 646 S.W.2d 927, 934 (Tex. 1983). By failing to comply with the briefing requirements of Rule 38.1(h), Miksch has waived her right to challenge that portion of the trial court's judgment relating to her fraud claim.

### Negligent Misrepresentation

Exxon next asserted that it was entitled to summary judgment on Miksch's negligent misrepresentation cause of action because the allegations in Miksch's petition are insufficient to support such a claim. To prevail on a claim for negligent misrepresentation, the plaintiff must prove, among other things, that the defendant misrepresented an *existing* fact in the course of the defendant's business. See Federal Land Bank Ass'n v. Sloane, 825 S.W.2d 439, 442 (Tex.1991). Because every element of a negligent misrepresentation claim must be established in order for there to be recovery, the absence of any element is grounds for summary judgment. See Stone v. Lawyers Title Ins. Corp., 554 S.W.2d 183, 185 (Tex.1977).

The situation in *Airborne Freight* is analogous to the present case. See Airborne Freight Corp., Inc. v. C.R. Lee Enterprises, 847 S.W.2d 289 (Tex.App.—El Paso 1992, writ denied). In that case, the employer assured an independent contractor that, "as long as you do your job, you'll have a job." See id. at 292. The employer subsequently fired the contractor who, in turn, sued the employer for various contract and tort claims, including negligent misrepresentation. See id. at 293. After considering the contractor's claim, the court found the employer's oral statement did not qualify as a "negligent misrepresentation" because it was merely a promise of future conduct, rather than a promise of existing fact. See id. at 298. Similarly, in this case, Mize's alleged oral promise not to terminate Miksch was not a misrepresentation of an existing fact but was, at most, a promise to refrain from taking some action *in the future*. As such, Miksch may not maintain a claim for negligent misrepresentation against Exxon, and the trial court did not err in granting summary judgment in favor of Exxon on this cause of action.
ly

### Waiver of Right to Terminate

Exxon's final ground for summary judgment asserted that Miksch's "waiver of right to terminate" claim must fail as a matter of law because Texas does not recognize any such cause of action. We agree. Miksch

---

9. Although a contractual relationship can create duties under both contract and tort law, the plaintiff's right of recovery is ordinarily on the contract alone if: (1) the defendant's conduct would give rise to liability only because it breaches the contract, or (2) the injury is only the economic loss to the subject matter of the con-

tract itself. See Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc., 960 S.W.2d 41, 45 (Tex.1998). In its motion for summary judgment, Exxon claimed Miksch's right of recovery, if any, is in contract alone because her injury stems solely from Exxon's alleged failure to honor her purported employment agreement.

has neither cited, nor have we found, any authority supporting her contention that a "waiver of right to terminate" claim is a viable cause of action in Texas. In addition, as Exxon correctly points out, "waiver" is merely a defensive theory a party may employ to prevent the loss of the party's existing rights. *See Hruska v. First State Bank of Deanville,* 747 S.W.2d 783, 785 (Tex.1988). The concept of waiver may *not* be used to create any contractual rights or obligations. *See id.* Accordingly, the trial court properly granted summary judgment on Miksch's "waiver of right to terminate" claim.

## Conclusion

Based on the record before us, we find that a genuine issue of material fact exists as to whether Mize's alleged oral statement modified Miksch's status as an at-will employee. Accordingly, we reverse the portion of the trial court's judgment relating to Miksch's breach of contract claim and remand that claim for trial. The remainder of the trial court's judgment is affirmed.

EDELMAN, Justice, concurring on motion for rehearing.

For a contract of employment to be created, the employer must unequivocally indicate a definite intent to be bound not to terminate the employee except under clearly specified circumstances. *See Montgomery County Hosp. Dist. v. Brown,* 965 S.W.2d 501, 502 (Tex.1998). An employee who has no formal agreement with his employer cannot construct one out of indefinite comments, encouragements, or assurances. *See id.* Therefore, an employer's statement that an employee will not be discharged as long as his work is satisfactory or that the employee would be discharged only for good cause do not manifest a definite intent not to terminate an employee under clearly specified circumstances because there is no agreement as to what "satisfactory" or "good cause" encompasses. *See id.*

Importantly, however, the fact that the particular statements addressed in *Brown* were not, as a matter of law, sufficiently specific to create a contract does not change the general rule that whether an agreement was reached by the parties is a question of fact where the existence of the agreement is disputed. *See, e.g., Preston Farm & Ranch*

*Supply, Inc. v. BioZyme Enterprises,* 625 S.W.2d 295, 298 (Tex.1981); STATE BAR OF TEXAS PATTERN JURY CHARGES—BUSINESS, CONSUMER & EMPLOYMENT PJC 101.1, 101.3 (1997) (jury question and instruction on existence of agreement). In this case, Miksch's affidavit attached to her summary judgment response states that she specifically asked her supervisor, Mize, whether her husband's operation of a Chevron station would pose any problem with her position at Exxon. The affidavit further states that Mize told her that the operation of the Chevron station "would not be a problem at all" and that Miksch understood from this that Mize was speaking on behalf of Exxon and that he had thereby agreed that Exxon would not object to any conflict of interest arising from her husband's operation of the Chevron station.

Unlike the situation in *Brown,* there is no lack of specificity here. The only circumstance to which Mize's alleged statement could pertain is the application of Exxon's conflict policy to the operation of the service station by Miksch's husband. In that regard, reasonable minds could differ as to whether, under the circumstances in which it was made, Mize's alleged statement conveyed an intent to contractually bind Exxon to waive its conflict policy. Because a fact issue therefore remains in this case whether the alleged actions of the parties created an agreement to modify their employment relationship, summary judgment could not properly be granted on that claim for lack of specificity.