NUMBER 13-03-421-CV

COURT OF APPEALS
 
THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG




C. E. BARKER, INC.,                                                                    Appellant,

v.

FIRSTCAPITAL BANK,                                                                  Appellee.




On appeal from the 24th District Court
of Victoria County, Texas.




MEMORANDUM OPINION

Before Justices Hinojosa, Yañez and Castillo
                                                                                     Memorandum Opinion by Justice Castillo
          The trial court granted summary judgment in this negligent misrepresentation case. 
By two issues, C. E. Barker appeals the trial court's order, which granted appellee
FirstCapital Bank's summary-judgment motion. We affirm the judgment of the trial court. 
I. BACKGROUND



          C. E. Barker is a Texas corporation that installs underground utilities. In 2000,
Barker had the opportunity to install utilities in a project being developed by Angul
Holdings, L.L.C. Before agreeing to install the utilities, Barker's agent for issuance of
construction bonds, Summit Global Partners, requested a letter from FirstCapital Bank
seeking confirmation that FirstCapital was Angul's development lender. Lynn Paul, a first
vice-president at FirstCapital, subsequently sent a signed letter to Summit ("Summit letter")
stating the following:
August 1, 2000
 
 
Summit Global Partners 
Houston, TX
 
          RE: See attached legal description
 
FirstCapital Bank has approved a development loan to Angul Holdings,
LLC which includes funds allocated to pay for the installation of
underground utilities. 
 
These funds will be advanced as work progresses, subject to the terms
and conditions of all loan and security documents and subject to Angul
Holdings, LLC strict compliance therewith. 
                                                     Yours truly, 
 
                                                     FIRST CAPITAL BANK 
                                                     BY: /s/ Lynn L. Paul
                                                                Name: Lynn L. Paul
                                                                Title: First Vice President
 
          Barker began work on the project in October 2000. At the close of that first month,
the engineer in charge of the project inspected the work done by Barker, and the owner
approved the itemized invoice for the work. Subsequently, FirstCapital paid Barker for the
completed work. In November, the invoice for the work totaled $236,946.31. Though the
owner approved the itemized invoice and the engineer approved the work, FirstCapital did
not pay the invoice. Barker continued working in the first part of December, the invoice for
this work totaling $162,553.79. Again, the engineer approved the work and the owner
approved the invoice for that work, but FirstCapital did not pay the invoice. FirstCapital then
informed Barker that it was refusing to pay the invoices because Angul had filed for
bankruptcy in early December. Barker filed suit on October 11, 2001, alleging negligent
misrepresentation by FirstCapital.II. SUMMARY-JUDGMENT MOTIONSA. Traditional Grounds
          FirstCapital filed a motion for summary judgment that included both traditional and
no-evidence grounds on March 25, 2003. In its traditional motion for summary judgment,
FirstCapital stated: (1) the information supplied by FirstCapital in the Summit letter is not
false; and (2) the information is not information that can constitute a negligent
misrepresentation. The exhibits attached to the motion are: (1) the Summit letter; (2)
Barker's responses to FirstCapital's request for admissions; (3) Barker's responses to
FirstCapital's first set of interrogatories; (4) the affidavit of Lynn L. Paul, first vice-president
at FirstCapital and loan officer in charge of FirstCapital's loan to Angul; (5) the loan
application completed by Angul Holdings on Liberty Savings Association letterhead; and (6)
a "Development Loan Agreement" dated November 20, 1998, executed by Liberty Savings
Association and Angul Holdings, L.L.C. FirstCapital is the successor by merger to Liberty
Savings Association.


         B. No-Evidence GroundsIn its no-evidence motion for summary judgment, FirstCapital asserted that there was
no evidence the information FirstCapital supplied to Summit in the letter was false. 
FirstCapital argues that the Summit letter reflects that (1) on the date of the Summit letter, 
FirstCapital made a loan to Angul, (2) the loan to Angul included funds allocated to pay for
the installation of underground utilities, and (3) FirstCapital would advance loan funds if
Angul complied with the loan documents and if those advances were not restricted by the
loan documents. 
C. Barker's Response
          In its summary-judgment response, Barker maintained that FirstCapital's "statement
that funds had been allocated to pay for the installation of underground utilities meant that
sufficient funds had been irrevocably set aside for that specific purpose only." Barker also
asserted that it had presented evidence of the other elements of a negligent
misrepresentation cause of action. As evidence, Barker attached: (1) the affidavit of David
M. Bearden, a former president of the Houston Contractors Association; (2) the Summit
letter; (3) the affidavit and resume of Charles L. Williams, an expert, with experience as a 
bank senior vice-president or president; and (4) the affidavit of Connard E. Barker, president
and owner of C. E. Barker, Inc.
 
III. ISSUES ON APPEAL
           The trial court granted FirstCapital's motion for summary judgment on both
traditional and no-evidence grounds. By two issues, Barker argues the trial court erred in
granting (1) the no-evidence motion because Barker presented competent summary-judgment evidence of every element of its cause of action, and (2) the traditional motion
because FirstCapital bank failed to disprove any element of Barker's misrepresentation
claim.
IV. JURISDICTION
          The initial inquiry for our court is always whether we have jurisdiction over an appeal. 
Tex. Ass'n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 443 (Tex. 1993). The question
of jurisdiction is a legal issue. Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 928 (Tex. 
1998). Therefore, we follow the de novo standard of review. Id. A court's jurisdiction is
never presumed. Alaniz v. Hoyt, 105 S.W.3d 330, 335 (Tex. App.–Corpus Christi 2003, no
pet.) (citing El-Kareh v. Tex. Alcoholic Beverage Comm'n, 874 S.W.2d 192, 194 (Tex.
App.–Houston [14th Dist.] 1994, no writ)). If the record does not affirmatively demonstrate
the appellate court’s jurisdiction, the appeal must be dismissed. Id. Absent an express
grant of authority, we do not have jurisdiction to review an interlocutory order. See Tex. Civ.
Prac. & Rem. Code Ann. § 51.014 (Vernon Supp. 2004-05); see also Steeple Oil & Gas
Corp. v. Amend, 394 S.W.2d 789, 790 (Tex. 1965) (per curiam). Therefore, before we
consider the issues, we first must determine if the order granting summary judgment is a
final judgment.
          The trial court's order states: 
On the 25th day of April, 2003, this court considered Defendant's Motion for
traditional Summary Judgment and for Summary Judgment under Rule
166a(i) and after the consideration of the pleadings, the summary judgment
evidence and the arguments of counsel presented to this court by the
parties, this Court is of the opinion that Defendant's motion be GRANTED.
 
It is THEREFORE, ORDERED, ADJUDGED and DECREED, that
DEFENDANTS' MOTION FOR TRADITIONAL SUMMARY JUDGMENT AND
FOR SUMMARY JUDGMENT UNDER RULE 166a(i) is hereby GRANTED,
and that Plaintiff, C. E. Barker, Inc., take nothing by its suit. Costs are
adjudged against said Plaintiff, C. E. Barker, Inc. 
 
All relief not herein granted is DENIED. This is a final judgment disposing of
all issues in the above numbered and entitled cause. 

The record shows that Barker's only claim is for negligent misrepresentation and there are
no counterclaims. We find that the trial court's disposition is final and we have jurisdiction. 
Lehmann v. Har-Con Corp., 39 S.W.3d 191, 200 (Tex. 2001).
V. STANDARDS OF REVIEW
          The standard of review for the grant of a motion for summary judgment is
determined by whether the motion was brought on no-evidence or traditional grounds. See
Tex. R. Civ. P. 166a (c), (i); see also Ortega v. City Nat'l Bank, 97 S.W.3d 765, 771 (Tex.
App.–Corpus Christi 2003, no pet.) (op. on reh'g). A no-evidence summary-judgment
motion asserts there is no evidence of one or more essential elements of claims upon
which the opposing party would have the burden of proof at trial. Tex. R. Civ. P. 166a(i). 
A no-evidence motion for summary judgment is properly granted only if the non-movant
fails to bring forth more than a scintilla of probative evidence to raise a genuine issue of
material fact as to the challenged element of the claims. See id.; Mulvey v. Mobil
Producing Tex. & N.M. Inc., 147 S.W.3d 594, 605 (Tex. App.–Corpus Christi 2004, pet.
denied) (citing AMS Constr. Co. v. Warm Springs Rehab. Found., 94 S.W.3d 152, 159
(Tex. App.–Corpus Christi 2002, no pet.)).
          The function of a summary judgment is to eliminate patently unmeritorious
claims and defenses, not to deprive litigants of the right to a jury trial. Hoyt, 105 S.W.3d
at 344. In both traditional and no-evidence summary-judgment motions, we review the
evidence "in the light most favorable to the nonmovant, disregarding all contrary evidence
and inferences." See KPMG Peat Marwick v. Harrison County Hous. Fin. Corp., 988
S.W.2d 746, 748 (Tex. 1999); Branton v. Wood, 100 S.W.3d 645, 646 (Tex. App.–Corpus
Christi 2003, no pet.). The movant bears the burden of showing both no genuine issue of
material fact and entitlement to judgment as a matter of law.  Hoyt, 105 S.W.3d at 345. 
We affirm a trial court's ruling on a summary-judgment motion if any of the theories
advanced in the motion is meritorious. State Farm Fire & Cas. Co. v. S.S., 858 S.W.2d
374, 380 (Tex. 1993); Boren v. Bullen, 972 S.W.2d 863, 865 (Tex. App.–Corpus Christi
1998, no pet.). We review a summary judgment de novo to determine whether a party
established its right to prevail as a matter of law. Nixon v. Mr. Prop. Mgmt. Co., 690
S.W.2d 546, 548-49 (Tex. 1985); Ortega, 97 S.W.3d at 771.A. Traditional Motion under Rule 166a(c)
          The non-movant has the burden to respond to a traditional summary-judgment
motion if the movant conclusively (1) establishes each element of its cause of action or
defense, or (2) negates at least one element of the non-movant's cause of action or
defense. Hoyt, 105 S.W.3d at 345. Thus, summary judgment for a defendant is proper
if the defendant disproves at least one element of each of the plaintiff's claims or
affirmatively establishes each element of an affirmative defense to each claim. Id.
 
 
B. No-Evidence Motion under Rule 166a(i)
          We review a no-evidence motion for summary judgment under the same legal
sufficiency standard as a directed verdict. See Tex. R. Civ. P. 166a(i); see also Branton,
100 S.W.3d at 646. The movant must assert that there is no evidence of an essential
element of a particular claim or defense on which the nonmovant would have the burden
of proof at trial. Branton, 100 S.W.3d at 647. By definition, the movant does not produce
any evidence. See Tex. R. Civ. P. 166a(I). Rather, the nonmovant must produce sufficient
evidence to raise a genuine issue of material fact as to the challenged elements. Id.;
Branton, 100 S.W.3d at 647. We consider any quantum of evidence greater than a scintilla
sufficient to raise a genuine issue of material fact. Branton, 100 S.W.3d at 647. More than
a scintilla of evidence exists when the proffered evidence "would enable reasonable and
fair-minded people to differ in their conclusions." Id. Conversely, less than a scintilla of
evidence exists when the proffered evidence merely "creates a . . . surmise or suspicion
of a fact" as to the material elements. Id. 
VI. NEGLIGENT MISREPRESENTATION
          The elements of a cause of action for negligent misrepresentation are: (1) the
representation is made by a defendant in the course of his business, or in a transaction in
which he has a pecuniary interest; (2) the defendant supplies "false information" for the
guidance of others in their business; (3) the defendant did not exercise reasonable care
or competence in obtaining or communicating the information; and (4) the plaintiff suffers
pecuniary loss by justifiably relying on the representation. Fed. Land Bank Ass'n v. Sloane,
825 S.W.2d 439, 442 (Tex. 1991). The sort of "false information" contemplated in a
negligent misrepresentation case is a statement of existing fact, not a promise of future
conduct. New York Life Ins. Co. v. Miller, 114 S.W.3d 114, 124 (Tex. App.–Austin 2003,
no pet.); Key v. Pierce, 8 S.W.3d 704, 709 (Tex. App.–Fort Worth 1999, pet denied); Allied
Vista, Inc. v. Holt, 987 S.W.2d 138, 141 (Tex. App.–Houston [14th Dist.] 1999, pet.
denied).     In its traditional summary-judgment motion, FirstCapital asserted that the
Summit letter was neither (1) false, nor (2) a statement of existing fact. 
VII. DISPOSITION–TRADITIONAL GROUNDS
A. FirstCapital's assertion that the Summit letter was not false
          In its second issue, FirstCapital argues summary judgment was proper on traditional
grounds. In its traditional motion for summary judgment, FirstCapital challenged the
second element of Barker's negligent representation claim. The second element of a
negligent misrepresentation claim is that the defendant supplies "false information" for the
guidance of others in their business. See Sloane, 825 S.W.2d at 442. Thus, FirstCapital
argued that the information in the Summit letter was not false. We revisit the relevant
language in the Summit letter:
FirstCapital Bank has approved a development loan to Angul Holdings, LLC
which includes funds allocated to pay for the installation of underground
utilities. 
 
These funds will be advanced as work progresses, subject to the terms and
conditions of all loan and security documents and subject to Angul Holdings,
LLC strict compliance therewith. 

1. The first paragraph
          To establish that the first paragraph was not false, FirstCapital tendered summary-judgment evidence that the loan to Angul was in fact approved. This evidence included
the affidavit of Lynn Paul–the Summit letter's author and the loan officer who oversaw the
loan from the time it was approved. FirstCapital also attached loan documents, including:
(1) the loan application and approval signed by Zack Hall as sole manager of Angul, and
Lynn Paul as senior vice-president of the bank; (2) the development loan agreement
between Angul and the bank, executed by Hall and Paul; and (3) the project budget. Both
Paul's affidavit and the loan documents show that the funds approved included funds
allocated to pay for the installation of underground utilities. The development loan
agreement states that FirstCapital was to loan funds to Angul for the purpose of procuring
underground utilities, and that Angul was required to "cause all underground utilities . . .
to be installed." Additionally, Paul's affidavit asserts that $481,000.00 of the $1,500,000.00
in funds to be advanced for the development were earmarked or set aside in the
development loan budget for construction costs related to underground utility construction. 
In the affidavit, Paul further avers that, on the date of the Summit letter, FirstCapital had
advanced none of the money earmarked for underground utility construction and the whole
of it remained available for that purpose. We conclude that FirstCapital provided summary-judgment evidence proving the first paragraph of the letter was not false.
2. The second paragraph
           It is well settled that supporting and opposing affidavits shall set forth such facts as
would be admissible in evidence. See Tex. R. Civ. P. 166a(f); see also United Blood
Servs. v. Longoria, 938 S.W.2d 29, 30 (Tex. 1997) (per curiam). "When part of a writing
is given in evidence by one party, the whole on the same subject may be inquired into by
the other, and any other . . . writing or recorded statement which is necessary to make it
fully understood or to explain the same may also be given in evidence." See Tex. R. Evid.
107. Thus, we must consider the Summit letter in its entirety. See id. Accordingly, we
now turn to the second paragraph of the Summit letter. 
          The second paragraph states that the funds will be advanced as work progresses,
subject to the terms and conditions of all loan and security documents and subject to
Angul's strict compliance "therewith." Paul's affidavit relates that "FirstCapital Bank was
contractually committed to make those advancements upon satisfaction of the conditions
contained in the loan documents."


 The loan documents in FirstCapital's summary-judgment evidence include Angul's loan application and the development loan agreement. 
Both documents include extensive terms and conditions.


 We conclude that the terms and
conditions in the loan and the security documents associated with the loan and Paul's
affidavit establish that FirstCapital was contractually committed to make advances upon
Angul's satisfaction of the conditions of the loan. 
B. FirstCapital's assertion that the Summit letter was not a 
statement of existing fact
          FirstCapital asserted in its second ground for traditional summary judgment that the
information in the Summit letter was not a statement of existing fact because: (1) the
information in the Summit letter amounted to a conditional statement about future events;
(2) the statement "on its face admits the possibility that [FirstCapital] might not fund the
loan at all . . . depending on the course of events that have yet to occur;" and (3) the
language cannot qualify as false information. We turn to the second paragraph in the
Summit letter to review FirstCapital's second ground for traditional summary judgment.
          FirstCapital directs us to Airborne Freight Corp. v. C. R. Lee Enters., Inc., 847
S.W.2d 289, 298 (Tex. App.–El Paso 1992, writ denied). In that case, Airborne's agent
stated to an employee, "as long as you do your job, you'll have a job." Id. at 292. When
Airborne later invoked a termination clause under a contract, the employee sued for
breach of contract, oral fraud, and negligent misrepresentation. Id. As to the negligent
misrepresentation claim, our sister court found that the above language "is simply not the
sort of assertion which will support a misrepresentation verdict . . . [appellee] needed to
show that Airborne misrepresented an existing fact, not a promise of future conduct." Id.
at 298. 
          FirstCapital further directs us to Mikish v. Exxon Corp., 979 S.W.2d 700 (Tex.
App.–Houston [14th Dist.] 1998, pet. denied). In Mikish, a supervisor informed an
employee that the employee's husband's business venture did not violate their company's
policy. Id. at 702. The company later fired the employee for breaching the policy. Id. The
court in that case stated that "[t]o prevail on a claim for negligent misrepresentation, the
plaintiff must prove, among other things, that the defendant misrepresented an existing fact
in the course of the defendant's business." Id. at 706 (citing Sloane, 825 S.W.2d at 442). 
          We have concluded that FirstCapital negated the second element of Barker's
negligent misrepresentation claim because summary-judgment evidence showed the
information in the first paragraph was not false. See Sloane, 825 S.W.2d at 442. We
conclude that the second paragraph in the Summit letter, whether or not false, is not a
statement of existing fact and is instead a conditional promise of future conduct. See C.R.
Lee Enter., Inc., 847 S.W.2d at 298; see also Miller, 114 S.W.3d at 124. When the two
assertions in the separate paragraphs of the Summit letter are construed together, the
language does not constitute "false information" under Texas case law. See Tex. R. Evid.
107; C.R. Lee Enter., Inc., 847 S.W.2d at 298; Exxon Corp., 979 S.W.2d at 706; see also
Miller, 114 S.W.3d at 124. VIII. Conclusion
          FirstCapital met its burden on its traditional motion for summary judgment by
conclusively negating the "false information" element of Barker's negligent
misrepresentation claim.


 In short, FirstCapital's summary-judgment evidence established
that the information in the Summit letter was not false or, in the case of the second
paragraph, was not a statement of existing fact and, thus, not actionable in a negligent
representation claim. We conclude summary judgment on traditional grounds was proper. 
See Hoyt, 105 S.W.3d at 345. Accordingly, we overrule Barker's second issue. Because
resolution of this issue is dispositive, we need not reach Barker's first issue. See Tex. R.
App. P. 47.1. 
          We affirm the judgment of the trial court.  
                                                                           ERRLINDA CASTILLO
                                                                           Justice
Memorandum Opinion delivered and 
filed this 19th day of May, 2005.