Opinion issued March 9, 2006     











In The
Court of Appeals
For The
First District of Texas




NO. 01-03-00795-CV




EL EXPRESO, INC. AND COACH USA, INC., Appellants

V.

ROBERT ZENDEJAS, Appellee

* * *

ROBERT ZENDEJAS, Appellant

V.

EL EXPRESO, INC. AND COACH USA, INC., Appellees




On Appeal from the 133rd District Court
Harris County, Texas
Trial Court Cause No. 2002-12789




OPINION ON MOTION FOR REHEARING
          On March 31, 2005, this Court issued an opinion affirming the judgment of the
trial court. El Expreso, Inc. and Coach USA, Inc., who are appellants and appellees
in this appeal,


 have filed a motion for rehearing. Robert Zendejas, who is also an
appellant and an appellee in this appeal, has filed a response. After due
consideration, the Court grants appellants’ motion for rehearing, withdraws its
opinion and judgment dated March 31, 2005, and issues this opinion and judgment
in their stead. The disposition, however, remains unchanged. 
          Zendejas sued his employer, El Expreso, Inc., for wrongful termination, based
upon breach of contract. The jury found that (1) Zendejas and El Expreso, Inc. had
agreed that Zendejas would not be terminated for attempting to ensure that El
Expreso, Inc. complied with safety laws and (2) Zendejas had been terminated for
attempting to ensure that El Expreso, Inc. complied with safety laws. The jury
awarded Zendejas actual damages of $105,000, plus pre-judgment interest in the
amount of $11,910.78 and attorney’s fees in the amount of $47,842. 
          Coach USA, Inc. and El Expreso, Inc., which was a wholly owned subsidiary
of Coach USA, Inc., appealed the judgment of the trial court in favor of Zendejas. 
Zendejas also appealed. We determine (1) whether the trial court erred in submitting
the charge to the jury because there was no modified oral employment contract as a
matter of law; (2) whether there was legally and factually sufficient evidence as to the
existence and breach of an oral term employment contract; and (3) whether Zendejas
preserved his complaint that the trial court erred by not disregarding a jury finding
that he be awarded no appellate attorney’s fees. We affirm.
Background
          Zendejas began working for a bus company, Kerrville Bus Lines, in 1992. 
Eventually, El Expreso acquired Kerrville Bus Lines. In 1999, when Coach
purchased El Expreso, Zendejas was promoted. Zendejas was terminated in 2000 due
to downsizing at El Expreso. However, Zendejas returned to work at El Expreso in
May 2001 to serve as manager of scheduling and charters. Mario Pedraza held
Zendejas’s former position as director of charters and bus operations. 
          During Zendejas’s first week of work in 2001, several El Expreso bus drivers
complained to him that they were being coerced into violating safety regulations by
driving their buses too long or too frequently. Zendejas expressed concern about the
violations to Pedraza, who was non-responsive. Consequently, Zendejas arranged a
meeting among himself, Pedraza, Jorge Martinez (the manager of safety and training),
and the company President, Joe Escobedo. Escobedo’s response to Zendejas’s
concerns was one of disinterest: Escobedo stated that he had hired Zendejas to deal
with such problems. 
          Zendejas eventually contacted Kathy Wagner, the regional safety director at
Coach, regarding his concerns about safety compliance. Wagner stated that Zendejas
should not participate in violating the safety laws and requested his help to bring El
Expreso into compliance with the regulations. Zendejas expressed concern that he
would be terminated if he followed her instructions to ensure compliance with safety
laws. Wagner reassured Zendejas that he would not be fired for complying with
safety regulations. As a result of Zendejas’s complaints, Wagner conducted an audit
of El Expreso. Wagner discovered fairly substantial deviations from safety laws,
including driver log fraud. As a result, Pedraza was reassigned to director of terminal
operations. 
          Wagner continued to seek Zendejas’s help in bringing El Expreso into
compliance with safety laws. Zendejas repeatedly expressed concern that he would
be fired if he ensured that drivers complied with safety regulations. Wagner again
assured Zendejas that he would not be fired for doing so. With these assurances,
Zendejas cancelled bus routes when eligible drivers were unavailable and sought
outside sources to fulfill the need for drivers who were able to work within the safety
regulations. 
          On June 11, 2001, Zendejas received a letter of reprimand recounting a 1997
episode in which he had disparaged a female co-worker and a June 6, 2001 incident
in which he had disparaged several female co-workers. Nonetheless, on June 21,
2001, Zendejas was promoted to his former position, as director of charters and bus
operations, which had been held previously by Pedraza. 
          Following the audit of El Expreso, tension mounted between Zendejas, on the
one hand, and Pedraza and Escobedo, on the other. Zendejas reported on a weekly
basis to Escobedo, who became angry when he reviewed Zendejas’s reports and
noticed that there were several route cancellations. Escobedo further complained that
Zendejas had told Wagner too much. Pedraza also became irritated with Zendejas
when Pedraza found out that bus runs had been cancelled. The relationship between
Zendejas and Pedraza and Escobedo became more and more strained as Zendejas
continued to seek outside drivers or to cancel bus runs. 
          On August 11, 2001, Zendejas called Wagner to address concerns that
Escobedo had been pressuring him to fire two drivers for retaliatory purposes. 
Wagner told Zendejas not to fire the drivers, but to wait until she had investigated the
matter. Zendejas expressed fear of termination if he failed to fire the drivers, but
Wagner told him that she would not allow him to be terminated.
          On August 21, 2001, Zendejas was notified that a bus driver had complained
that another driver had committed safety violations. Zendejas was asked to keep the
report confidential, but refused, and ultimately confronted the driver suspected of
having violated the safety rules. On August 30, 2001, Escobedo asked Zendejas if
he was aware of the complaints against the driver. When Zendejas replied that he was
aware, Escobedo asked him what he planned to do about it. Zendejas replied that he
was going to wait for the safety department to see if it could set up an investigation.
          Later that month, the employee who had reported his fellow co-worker for
safety violations complained to the director of safety that he had been exposed as the
source of the complaint against his co-worker. Upon hearing this, the safety
department informed Wagner that its investigation had been blown because Zendejas
had approached the suspected driver. On September 6, 2001, Escobedo approached
Zendejas and asked him if he had told the suspected driver who had reported him. 
Zendejas denied that he had done so. On September 12, 2001, Escobedo terminated
Zendejas’s employment.
El Expreso and Coach’s Appeal
A.      Jury Charge
          In their first issue, appellants contend that the trial court erred in submitting
question one in the jury charge because, as a matter of law, the alleged agreement in
question did not constitute an oral, modified term employment contract. Question
one in the charge asked, “Did Coach USA and Robert Zendejas agree that Coach
USA would not allow Robert Zendejas to be terminated for attempting to insure that
El Expreso complied with safety laws?” 
          What constitutes an enforceable contract is a question of law for the trial court. 
Gaede v. SK Investment Inc., 38 S.W.3d 753, 757 (Tex. App.—Houston [14th Dist.]
2001, pet. denied). This question of law is reviewed de novo and without deference
to the lower court’s conclusion. Butler v. Arrow Mirror & Glass, Inc., 51 S.W.3d
787, 792 (Tex. App.—Houston [1st Dist.] 2001, no pet.).Appellants argue that, because an employer’s vague statements about its ability
to terminate do not modify at-will status, the agreement in question does not
constitute a modified employment agreement. Appellants contend that the agreement,
as stated in the jury charge, was not specific and definite enough to limit El Expreso’s
right to terminate Zendejas’s employment. Zendejas contends that the agreement
carved out a single exception to his at-will status and is sufficiently definite to
constitute a modification of at-will status. 
          Absent a specific agreement to the contrary, the employer or the employee may
terminate employment at will “for good cause, bad cause, or no cause at all.” 
Montgomery County Hosp. Dist. v. Brown, 965 S.W.2d 501, 502 (Tex. 1998). In
order to modify the at-will status of an employment relationship, the employer must
unequivocally indicate a definite intent to be bound not to terminate the employee
under certain circumstances. Id. General, indefinite statements will not serve to limit
an employer’s right to discharge an employee. Id. Thus, an agreement to modify the
at-will employment relationship must be “(1) expressed, rather than implied, and (2)
clear and specific.” Miksch v. Exxon Corp., 979 S.W.2d 700, 703 (Tex.
App.—Houston [14th Dist.] 1998, pet. denied). Likewise, an employer’s oral
statements may not modify an employee’s at-will status unless there is a definite,
stated intention to do so. See Brown, 965 S.W.2d at 501. The critical factor in
determining the validity of an agreement to modify at-will status is whether an
employer has “‘unequivocally indicated a definite intent to be bound not to terminate
the employee except under clearly specified circumstances.’” Miksch, 979 S.W.2d
at 705 (quoting Brown, 965 S.W.2d at 538). 
          Here, the agreement that formed the basis of jury question one was unequivocal
and definite and showed an intent not to terminate Zendejas if he acted in clearly
specified circumstances. We conclude that the agreement in the charge was not
merely a general comment that Zendejas would not be terminated as long as his work
was satisfactory, as in Brown. See Brown, 965 S.W.2d at 502. 
          In Miksch v. Exxon Corp., Miksch was employed as a secretary in the real
estate division of Exxon’s marketing department. Id., 979 S.W.2d at 701. In 1987,
her husband began investigating the possibility of leasing and operating a Chevron
station. Id. Exxon had a written conflict-of-interest policy prohibiting an employee
or the spouse of an employee from competing with Exxon. Id. Miksch allegedly
spoke with her supervisor and asked him whether her husband’s operation of a
Chevron station would threaten her job. Id. at 702. The supervisor allegedly told
Miksch that “‘it would not be a problem at all.’” Id. Thereafter, Miksch’s husband
leased the Chevron station. Id. In 1994, Exxon revised its conflicts policy, so that
the policy provided that all conflicts had to be approved by a member of the
company’s senior management. Id. In that same year, Miksch’s new supervisor
informed her that she was in violation of the conflicts policy and that her husband
would have to give up the Chevron station for her to keep her job. Id. When she and
her husband refused, she was terminated. Id.
          Miksch acknowledged that she was an at-will employee, but claimed that
evidence existed to show that her supervisor’s oral statements regarding the Chevron
station had altered her at-will status. Id. at 703. The Fourteenth Court of Appeals
held that the supreme court, in Brown, had “left open the possibility that such [verbal]
statements could, under certain circumstances, be sufficient to create an enforceable
agreement.” Id. at 704. The court also held that the alleged statement by the
supervisor did “not contain ambiguous terminology or require one to speculate as to
the parameters of the parties’ purported agreement.” Id. at 705. Miksch’s summary
judgment evidence established that she had asked her employer whether her
husband’s plan to lease a Chevron station would jeopardize her employment. Id. Her
summary judgment evidence showed that the supervisor’s response was clear and
definite and had communicated the clear message that Miksch would not be fired for
her husband’s leasing the Chevron station. Id.
          As in Miksch, the agreement in this case set forth an express agreement
between appellants and Zendejas that showed a clear and specific limitation on the
right to terminate. The agreement did not contain ambiguous terminology or require
speculation as to the parameters of the parties’ purported agreement. See id. Rather,
the agreement was based on a clear set of standards—that Zendejas would not be
terminated for attempting to comply with federal and state safety laws. 
          Likewise, the record shows that Zendejas specifically expressed concern about
whether he would be fired for attempting to bring El Expreso into compliance with
safety laws. The record shows that a Coach employee, Zendejas’s superior,
responded specifically and definitely that Zendejas would not be terminated for doing
so. Taken in the context of the entire case, the agreement between Zendejas and
appellants communicated the clear message that Zendejas would not be fired for
attempting to make El Expreso comply with a discrete set of applicable safety
regulations. See id. 
          Appellants also contend that our holding that the agreement in this case created
a modification provides employees with a vehicle to abuse their employment-at-will
status. Specifically, appellants contend that, if the agreement in this case constitutes
a modification, Zendejas could have acted in a completely unreasonable and
unprofessional manner in ensuring El Expreso’s compliance with safety regulations
without fear of termination. This contention is without merit. If an employee’s at-will status is modified and an employee abuses that modification by wrongful
conduct, an employer can terminate the employment based not on the modification,
but on the employee’s inappropriate conduct. 
          Moreover, this argument completely ignores the function of question two of the
jury charge, which asked, “Was Robert Zendejas terminated for attempting to insure
that El Expreso complied with safety laws?” By answering “yes” to question two, the
jury determined that Zendejas had been terminated for attempting to ensure
compliance with safety laws and not for other alleged wrongful conduct. 
          For these reasons, we hold that the trial court did not err in submitting question
one to the jury. We overrule appellants’ first issue.
B.      Legal and Factual Sufficiency
          In their second and third issues, appellants contend that the trial court erred in
denying their motions for directed verdict, for judgment notwithstanding the verdict,
and for new trial because the evidence was legally and factually insufficient to
support the existence and breach of an oral, modified term employment contract. Under the no-evidence standard of review, the reviewing “court considers only
the evidence and inferences tending to support the findings, disregarding the evidence
and inferences contrary to the findings.” Orozco v. Orozco, 917 S.W.2d 70, 73-74
(Tex. App.—San Antonio 1996, writ denied). If more than a scintilla of evidence
supports the finding, the point of error must be overruled. Id. at 74. “More than a
scintilla of evidence exists where the evidence supporting the finding, as a whole,
‘rises to a level that would enable reasonable and fair-minded people to differ in their
conclusions.’” Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex. 1995)
(quoting Transp. Ins. Co. v. Moriel, 879 S.W.2d 10, 25 (Tex. 1994)). When
considering a factual-sufficiency point, the appellate court considers all of the
evidence—both the evidence supporting, and the evidence undermining, the
challenged findings. See Orozco, 917 S.W.2d at 74. Reversal is required only when
the jury’s finding is so contrary to the “great weight and preponderance of the
evidence as to be manifestly unjust.” Pool v. Ford Motor Co., 715 S.W.2d 629, 635
(Tex. 1986); see Orozco, 917 S.W.2d at 74.
          Appellants first contend that there is no evidence of an oral agreement
sufficiently precise and definite to meet the standards under Brown. However, the
evidence reveals several instances between Zendejas and Wagner that support the
finding that a modification to Zendejas’s at-will status existed. On one occasion, 
after Zendejas and Wagner had discussed that El Expreso had to comply with safety
regulations, Zendejas complained to Wagner that using the means that she had
suggested (using outside sources, using sister companies, or cancelling runs) to
ensure compliance would certainly lead to his being fired in retaliation. Zendejas
testified that Wagner responded to his concern by stating, “We won’t let that happen. 
From this point neither Mario nor Joe has the authority to hire or fire.” Wagner also
testified that she told Zendejas several times that he would not be fired for ensuring
compliance with safety laws. Zendejas testified that he relied on Wagner’s promise
that she would not allow him to be fired for ensuring compliance with safety laws. 
          Appellants also contend (1) that Wagner’s statements were not sufficiently
clear to constitute a modification of Zendejas’s at-will status because she did not
specifically state any exceptions to the company’s right to fire Zendejas and (2) that
Zendejas’s testimony showed only that his efforts to comply with safety rules were
part of his ordinary job responsibilities. Concerning the first contention, however,
as the court in Miksch recognized, Brown does not “suggest that an employer must
utter certain ‘magic words’ in order to agree to limit its right to terminate an at-will
employee.” Miksch, 979 S.W.2d at 707. Rather, the relevant determination is
whether the employer’s oral statement evidences a definite intent not to terminate the
employee under clearly specified circumstances. Id. at 705. In this case, Wagner’s
statement is some evidence showing a clear intent to protect Zendejas from
termination in the event that he ensured compliance with safety laws by using outside
sources or sister companies or by cancelling runs. Because more than a scintilla of
evidence exists that Zendejas’s at-will status was modified, and because the jury’s
finding is not against the great weight and preponderance of the evidence, we hold
that the evidence is legally and factually sufficient to support that finding.
          Appellants also contend that the evidence is legally and factually insufficient
to show that the agreement was supported by consideration because Zendejas was
already required to take actions to ensure compliance with safety laws. Thus,
appellants contend that Wagner’s promise was merely one not to fire Zendejas for
carrying out his already existing job duties. When all of the evidence is viewed in
context, it is clear that Zendejas agreed to go beyond his assigned duties to ensure
compliance with safety laws because of Wagner’s assurances. Wagner’s statements
to Zendejas expanded his authority to comply with safety regulations by allowing him
to use whatever means were necessary to ensure compliance, without fear of
retaliatory termination. 
          Specifically, the evidence shows that, even against the warnings of his direct
superiors, Zendejas took measures to bring El Expreso into compliance, including
cancelling bus schedules, reporting violations, and hiring drivers from sister
companies. Zendejas reported directly to Escobedo on a weekly basis. One week,
when Zendejas had cancelled many bus runs, Escobedo stated, “You can’t do this. 
We are going to go broke.” On another occasion, Pedraza told Zendejas, “I want to
tell you, don’t be cancelling any of my runs.” Despite being warned by Escobedo and
Pedraza that he was to “make sure that if you use anybody you use our people,”
Zendejas continued to ensure compliance with safety laws by using other necessary
means. Thus, Zendejas acted under the authority of Wagner to ensure safety
compliance in exchange for not being terminated by his immediate supervisors, who
had instructed him not to take such measures. Because more than a scintilla of
evidence exists to show that consideration existed for the modification of Zendejas’s
at-will status, and because the finding is not against the great weight and
preponderance of the evidence, the evidence is legally and factually sufficient to
show that consideration existed for Zendejas’s ensuring compliance with safety laws. 
          We overrule appellants’ second and third issues. Zendejas’s Appeal
          Zendejas filed a separate notice of appeal and, in one issue, contends now that
he is entitled to appellate attorney’s fees as a matter of law. Zendejas contends that
the trial court should have disregarded the jury’s negative answer to the question on
his appellate attorney’s fees and entered a judgment awarding those fees to him. 
Zendejas also contends that this Court should reform the judgment to include an
award in the amount of $20,000 for his appellate attorney’s fees in this Court and
$30,000 for attorney’s fees on petition to the Supreme Court of Texas. 
          Zendejas has not preserved this issue for appeal. To preserve this type of
complaint, an appellant must make (1) a motion for directed verdict; (2) an objection
to the submission of a jury question; (3) a motion for judgment notwithstanding the
verdict; (4) a motion to disregard the jury’s answer to a vital fact issue; or (5) a
motion for new trial. Aero Energy, Inc. v. Circle C Drilling Co., 699 S.W.2d 821,
822 (Tex. 1985). Zendejas did not employ any of these preservation methods that
could apply here. Thus, this challenge is waived on appeal. See id. 
          We overrule Zendejas’s sole issue. 
Conclusion
          We affirm the judgment of the trial court. 
 
 
 
                                                             Tim Taft
                                                             Justice
 
Panel consists of Justices Taft, Keyes, and Hanks.