MONTGOMERY COUNTY HOSPITAL
DISTRICT f/d/b/a Medical Center
Hospital, Petitioner,

v.

Valarie BROWN, Respondent.

No. 96–1077.

Supreme Court of Texas.

Argued Feb. 26, 1997.

Decided March 13, 1998.

Terri S. Harris, Timothy D. Riley, Houston, for Petitioner.

Laurence W. Watts, Aaron J. Bennett, Carleton C. Casteel, Houston, for Respondent.

HECHT, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice, ENOCH, SPECTOR, OWEN, BAKER and ABBOTT, Justices, joined.

The principal issue before us is whether at-will employment can be modified by nothing more than an employer's oral assurances that an employee whose work is satisfactory will not be terminated without good cause. We hold that an employer's oral statements do not modify an employee's at-will status absent a definite, stated intention to the contrary. We conclude that the court of appeals improperly reversed the summary judgment for the employer in this case. 929 S.W.2d 577.

For ten years Valarie Brown was employed by the Montgomery County Hospital

District as laboratory systems manager for Medical Center Hospital. After her employment terminated, Brown brought this action against the District and its president and vice president (collectively, "the District") for breach of oral and written contracts of employment and deprivation of property and liberty interests protected by the Texas Constitution. The district court granted summary judgment for the District. The circumstances surrounding the termination of Brown's employment, vigorously disputed by the parties, are largely irrelevant to the contract issues before us. Given the conflict in the summary judgment record, we accept as true Brown's assertion that she did not voluntarily resign but was fired without good cause. We assume that Brown is not estopped by acceptance of her severance pay to assert that she was wrongfully terminated. And we take Brown's word that:

> At the time I was hired as well as during my employment, I was told by [the Hospital administrator] that I would be able to keep my job at the Hospital as long as I was doing my job and that I would not be fired unless there was a good reason or good cause to fire me. This representation was important to me since I was going to have to relocate from Houston to the Conroe area if I accepted the position with the Hospital.

The court of appeals held as a matter of law that the Hospital's employee manual was not an employment contract as Brown claimed, *Brown v. Montgomery County Hosp.*, 929 S.W.2d at 583 (Tex.App.—Beaumont 1996), and Brown has not appealed that ruling. But the appeals court held that fact questions subsisted concerning the existence of an oral employment contract, based on the hospital administrator's alleged assurances, that precluded summary judgment. 929 S.W.2d at 583–585. The court also held that such a contract was not, as a matter of law, barred by the Statute of Frauds, TEX. BUS. & COM.CODE § 26.01. 929 S.W.2d at 584–585. Because the effect of an employer's oral assurances on at-will employment is an important and recurring issue, we granted the District's application for writ of error. 40 TEX. SUP.CT. J. 255 (Jan. 31, 1997).

■ For well over a century, the general rule in this State, as in most American jurisdictions, has been that absent a specific agreement to the contrary, employment may be terminated by the employer or the employee at will, for good cause, bad cause, or no cause at all. *Federal Express Corp. v. Dutschmann*, 846 S.W.2d 282, 283 (Tex.1993) (per curiam); *Schroeder v. Texas Iron Works*, 813 S.W.2d 483, 489 (Tex.1991); *Winters v. Houston Chronicle Pub. Co.*, 795 S.W.2d 723, 723 (Tex.1990); *Sabine Pilot Serv., Inc. v. Hauck*, 687 S.W.2d 733, 734–35 (Tex.1985); *East Line & R.R.R. Co. v. Scott*, 72 Tex. 70, 10 S.W. 99, 102 (1888). The District argues that its assurances to Brown were too indefinite to constitute an agreement limiting the District's right to discharge Brown at will. We agree.

■ A promise, acceptance of which will form a contract, "is a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made." RESTATEMENT (SECOND) OF CONTRACTS § 2(1) (1981). General statements like those made to Brown simply do not justify the conclusion that the speaker intends by them to make a binding contract of employment. For such a contract to exist, the employer must unequivocally indicate a definite intent to be bound not to terminate the employee except under clearly specified circumstances. General comments that an employee will not be discharged as long as his work is satisfactory do not in themselves manifest such an intent. Neither do statements that an employee will be discharged only for "good reason" or "good cause" when there is no agreement on what those terms encompass. Without such agreement the employee cannot reasonably expect to limit the employer's right to terminate him. An employee who has no formal agreement with his employer cannot construct one out of indefinite comments, encouragements, or assurances.

This is the rule in other states. For example, in *Rowe v. Montgomery Ward & Co.*, 437 Mich. 627, 473 N.W.2d 268 (1991), the court held that a supervisor's assurance that employees would have their jobs "generally, as

long as they generated sales and were honest" did not limit the employer's right to discharge an employee at will. *Id.* at 270. Noting that a decade earlier it had "joined the forefront of a nationwide experiment in which, under varying theories, courts extended job security to nonunionized employees", the court retreated from earlier decisions in which it had been more inclined to find an employment agreement in general assurances made by the employer. *Id.* at 269. "[C]alling something a contract that is in no sense a contract cannot advance respect for the law", the court wrote. *Id.* It concluded: "[O]ral statements of job security must be clear and unequivocal to overcome the presumption of employment at will." *Id.* at 275.

Likewise, in *Hayes v. Eateries, Inc.*, 905 P.2d 778 (Okla.1995), the court held that oral assurances that an employee "would be employed as long as he did an adequate job and/or performed his duties satisfactorily" did not constitute "a binding agreement that protected him from discharge except for 'just cause'." *Id.* at 782. The court explained:

> Courts "must distinguish between carefully developed employer representations upon which an employee may justifiably rely, and general platitudes, vague assurances, praise, and indefinite promises of permanent continued employment." Only when the promises are definite and, thus, of the sort which may be reasonably or justifiably relied on by the employee, will a contract claim be viable, not when the employee relies on only vague assurances that no reasonable person would justifiably rely upon. There is, thus, an objective component to the nature of such a contract claim in the form of definite and specific promises by the employer sufficient to substantively restrict the reasons for termination.

*Id.* at 783 (citations omitted).

There are scores of cases like these throughout the country, and courts in different jurisdictions have reached different conclusions, sometimes on the basis of the particular circumstances, and sometimes because of their view that oral, informal statements in the employment context should simply be given more effect. *See generally* Theresa Ludwig Kruk, Annotation, *Right to Discharge Allegedly "At–Will" Employee as Affected by Employer's Promulgation of Employment Policies as to Discharge*, 33 A.L.R.4th 120 (1984). From our review of these cases we conclude that those we have cited are better reasoned.

Consistent with our holding in the case, the court in *Byars v. City of Austin*, 910 S.W.2d 520, 523–524 (Tex.App.—Austin 1995, writ denied), held that an employee handbook's description of usual disciplinary procedures were not "clear and specific" so as to modify an employment at will. Three other decisions of our intermediate courts that have dealt with statements similar to those made to Brown in this case did not consider whether the statements made were definite enough to constitute an enforceable contract. *Hardison v. A.H. Belo Corp.*, 247 S.W.2d 167 (Tex.Civ.App.—Dallas 1952, no writ); *Johnson v. Ford Motor Co.*, 690 S.W.2d 90 (Tex. App.—Eastland 1985, writ ref'd n.r.e.); *Morgan v. Jack Brown Cleaners, Inc.*, 764 S.W.2d 825 (Tex.App.—Austin 1989, writ denied). To the extent these cases can be read to reach a result contrary to our holding here, we disapprove them.

■ The District also argues that oral promises modifying employment at will are unenforceable under the Statute of Frauds. The District is correct only if the promises cannot be performed within one year. *Miller v. Riata Cadillac Co.*, 517 S.W.2d 773, 775 (Tex.1974). An employment contract for an indefinite term is considered performable within one year. *Bratcher v. Dozier*, 162 Tex. 319, 346 S.W.2d 795 (1961). It would be unusual, however, for oral assurances of employment for an indefinite term to be sufficiently specific and definite to modify an at-will relationship.

The concurring opinion "would imply a term of working-life duration into the District's alleged oral commitment to provide Brown job security, a period that clearly exceeded one year." *Post*, at 505. The record, however, does not support such an implication. Perhaps Brown, like most employees, hoped to work for the District as long as she wanted, and much longer than a year, but the concurrence cites no evidentiary support for the assertion that "the 'tenor and

understanding' between the parties, if any, was that Brown would have many years of job security." *Post,* at 504. Even if a term can be supplied by implication, there is no basis for doing so in this case. The concurrence's reliance on *Schroeder v. Texas Iron Works, Inc.,* 813 S.W.2d 483, 489 (Tex.1991), to justify an implication is misplaced. In that case we simply accepted as true the plaintiff's allegations that his contract was to remain in effect for eight to ten years.

Finally, Brown's constitutional claims are premised on her assertion that she had an oral employment contract with the District based on the assurances given her. Because she had no such contract, her constitutional claims fail.

Accordingly, the judgment of the court of appeals is reversed and judgment is rendered for the District.

HANKINSON, J., did not participate in the decision.

GONZALEZ, Justice, concurring.

The Court decides this case on the basis of lack of specificity and definiteness; however, the Court chooses to leave open the issue of whether more specific statements assuring job security can modify at-will contracts. Because the terms "good reason" and "good cause" lack a standardized meaning, but can mean different things in different contexts, I concur with the Court's judgment. Definiteness is but one element of contract formation that will be helpful in determining whether an agreement is sufficient to rebut the strong presumption of at-will employment. *See American Lantern Co. v. Hamilton,* No. 04–95–00517–CV, 1997 WL 667167, —— S.W.2d —— (Tex.App.—San Antonio, Oct.22, 1997, n.w.h.); Rebecca Guerra, Comment, *Oral Contracts to Fire for Good Cause Only: Texas Courts Putting the Cart Before the Horse,* 47 BAYLOR L.REV. 1181 (1995). But even assuming that Brown's job assurances were specific and emphatic enough to show that the parties had the mutual intent and understanding necessary to create a contract, I would hold the contract void under the Statute of Frauds. *See* TEX. BUS. & COM.CODE § 26.01 (making unenforceable an oral "agreement which is not to be performed within one year from the date of making the agreement"). This would more fully resolve whether oral statements of job security can ever trump the presumption that employment is at-will.

The Court holds that Brown's job assurances are not subject to the Statute of Frauds, citing *Bratcher v. Dozier,* 162 Tex. 319, 346 S.W.2d 795 (1961), and *Miller v. Riata Cadillac Co.,* 517 S.W.2d 773 (Tex. 1974), for the proposition that "[a]n employment contract for an indefinite term is considered performable within one year." 517 S.W.2d 775. I disagree. While the *general* rule is that "where no period of performance is stated ... the statute is inapplicable," this is true only if "there is nothing in the agreement itself to show that it cannot be performed within a year *according to the tenor and the understanding of the parties.*" *Bratcher,* 346 S.W.2d at 796; *Miller,* 517 S.W.2d at 776 (emphasis added). Our inquiry should not end simply because the contract was for an indefinite term. We should examine the understanding of the parties and the nature of the performance expected before deciding whether the agreement can be performed within a year.

The fact that the parties do not expressly state the term of performance is not determinative. It is settled law in this state that "where an oral contract omits the performance term, duration may properly be implied from extrinsic evidence." *Niday v. Niday,* 643 S.W.2d 919, 920 (Tex.1982) (per curiam); *see also Hall v. Hall,* 158 Tex. 95, 308 S.W.2d 12, 16 (1957) ("When the parties omit an express stipulation as to time, it is in accord with human experience and accepted standards of law for us to assume that they meant whatever term of days or years might be reasonable in the light of the circumstances before them at the date of the contract."). For summary judgment purposes, Brown's reliance upon the District's alleged assurances establishes that the "tenor and understanding" between the parties, if any, was that Brown would have many years of job security. Brown asserts an entitlement to her job that must be objectively understood as extending until she retired, quit, or

died, provided there was no good reason or good cause to fire her.

This Court implied a term of working-life duration into a similar oral contract for job security. *See Schroeder v. Texas Iron Works, Inc.,* 813 S.W.2d 483 (Tex.1991). Schroeder sought assurances of job security from his supervisor because he was "about to build his home and 'did not want to just get it built or just moved in and get laid-off.'" *Id.* at 484. The supervisor assured him: "No, don't worry about that, go ahead and build it." *Id.* There was no mention in this oral exchange of any definite period of time. Nevertheless, we did not hesitate to imply a definite term of eight to ten years into this job security agreement, since Schroeder was 57 years old and hoped to live out his eventual retirement in the house he was building. *Id.* at 489. Because Schroeder expected more than one year of job security, we held that these oral assurances were void under the Statute of Frauds. *Id.*

In *Texas Iron Works,* we recognized Schroeder's expectation of long-term job security by noticing his residential concerns; likewise, Brown's residential concerns reveal that she had similar expectations of long-term job-security. Brown explains that "[t]his representation was important to me since I was going to have to relocate from Houston to the Conroe area if I accepted the position with the Hospital." Moreover, there is no evidence that Brown believed that the District's promise of job security was for one year or less. Consistent with *Schroeder,* I would imply a term of working-life duration into the District's alleged oral commitment to provide Brown job security, a period that clearly exceeded one year.

There were three contingencies which could have terminated Brown's employment within one year: Brown could have (1) died; (2) breached the contract by *not* performing at the level of a person of ordinary prudence; or (3) quit. However, none of these three contingencies removes the alleged contract from the operation of the Statute of Frauds.

In *Gilliam v. Kouchoucos,* 161 Tex. 299, 340 S.W.2d 27 (1960), this Court held that a provision of an oral contract of employment terminating the contract upon the death of the employee did not remove the contract from the operation of the Statute of Frauds. We noted that the Statute of Frauds "has application only to contracts which are terminated *by performance,* and does not apply to contracts which may be terminated within a year by some means other than performance." *Id.* at 28. Death, we explained, is not performance, but instead excusable nonperformance. *Id.* at 29.

This reasoning is equally applicable to termination by breach. Although it was possible for Brown to discontinue "doing her job" within one year of the alleged agreement, such a contingency would constitute nonperformance and would not save the contract from the operation of the Statute of Frauds. *See Collins v. Allied Pharmacy Mgt., Inc.,* 871 S.W.2d 929, 934 (Tex.App.—Houston [14th Dist.] 1994, no writ) ("[F]or a contract to fall outside the statute of frauds, *performance* must be possible within one year; termination for cause is not equivalent to *performance* of the contract.").

Likewise, it was possible for Brown to quit her job within one year of the alleged agreement; but by quitting, Brown would have simply exercised her unilateral right to discharge the District of its obligation to retain her. Quitting constitutes a *release,* not a *performance* of an employment contract. As we explained in *Gilliam,* "[c]ontracts for service for more than a year [terminable] at the election of a party upon the happening of some event, or even at the mere will of a party, have generally been held to be within the statute." 340 S.W.2d at 29 (quoting *Marble v. Clinton,* 298 Mass. 87, 9 N.E.2d 522, 524 (1937)).

Although the Court held that the Statute of Frauds did not apply to the oral employment contracts in both *Miller* and *Bratcher,* those cases concerned the enforcement of oral compensation agreements, not promises of future job security. In both cases the employer was free to terminate the employee at any time and for any reason, provided it compensated the employee for work done up until the time of termination. Accordingly, in both cases the employer and employee were capable of completely performing their

respective obligations within a year, and therefore *Miller* and *Bratcher* do not apply to Brown's alleged agreement.

In summary, I would hold that even if the District's alleged oral agreement with Brown formed a contract, it would be subject to the Statute of Frauds. This would settle the issue we left open in *Goodyear Tire and Rubber Co. v. Portilla*, 879 S.W.2d 47, 52 n. 8 (Tex.1994), of whether oral statements assuring job security can modify employment-at-will contracts. Because a promise not to terminate employment except for good cause cannot be performed within one year, but can only be terminated by the promisee's death, breach, or release, the promise is not enforceable unless it is in writing.