EL EXPRESO, INC. and Coach
USA, Inc., Appellants,

v.

Robert ZENDEJAS, Appellee.

Robert Zendejas, Appellant,

v.

El Expreso, Inc. and Coach
USA, Inc., Appellees.

No. 01–03–00795–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

March 9, 2006.

Cliff Harrison, Harrison, Bettis & Staff, McFarland & Weems, LLP, Houston, TX, John Withers Clay, Brewer & Pritchard, Houston, TX, for Appellant.

Anne Pike, David M. Gunn, Beck, Redden & Secrest, L.L.P., G. Scott Fiddler, Law Office of G. Scott Fiddler, P.C., Houston, for Appellee.

Panel consists of Justices TAFT, KEYES, and HANKS.

## OPINION ON MOTION FOR REHEARING

TIM TAFT, Justice.

On March 31, 2005, this Court issued an opinion affirming the judgment of the trial court. El Expreso, Inc. and Coach USA, Inc., who are appellants and appellees in this appeal,[1] have filed a motion for rehearing. Robert Zendejas, who is also an appellant and an appellee in this appeal, has filed a response. After due consideration, the Court grants appellants' motion for rehearing, withdraws its opinion and judgment dated March 31, 2005, and issues this opinion and judgment in their stead. The disposition, however, remains unchanged.

Zendejas sued his employer, El Expreso, Inc., for wrongful termination, based upon breach of contract. The jury found that (1) Zendejas and El Expreso, Inc. had agreed that Zendejas would not be terminated for attempting to ensure that El Expreso, Inc. complied with safety laws and (2) Zendejas had been terminated for attempting to ensure that El Expreso, Inc. complied with safety laws. The jury awarded Zendejas actual damages of $105,000, plus pre-judgment interest in the amount of $11,910.78 and attorney's fees in the amount of $47,842.

Coach USA, Inc. and El Expreso, Inc., which was a wholly owned subsidiary of Coach USA, Inc., appealed the judgment of the trial court in favor of Zendejas. Zendejas also appealed. We determine (1) whether the trial court erred in submitting the charge to the jury because there was no modified oral employment contract as a matter of law; (2) whether there was legally and factually sufficient evidence as to the existence and breach of an oral term employment contract; and (3) whether Zendejas preserved his complaint that the trial court erred by not disregarding a jury finding that he be awarded no appellate attorney's fees. We affirm.

## Background

Zendejas began working for a bus company, Kerrville Bus Lines, in 1992. Eventually, El Expreso acquired Kerrville Bus Lines. In 1999, when Coach purchased El Expreso, Zendejas was promoted. Zendejas was terminated in 2000 due to downsizing at El Expreso. However, Zendejas returned to work at El Expreso in May 2001 to serve as manager of scheduling and charters. Mario Pedraza held Zendejas's former position as director of charters and bus operations.

During Zendejas's first week of work in 2001, several El Expreso bus drivers complained to him that they were being coerced into violating safety regulations by driving their buses too long or too frequently. Zendejas expressed concern about the violations to Pedraza, who was non-responsive. Consequently, Zendejas arranged a meeting among himself, Pedraza, Jorge Martinez (the manager of safety

---

[1] For simplicity's sake, we refer to El Expreso, Inc. and Coach USA, Inc. together as "appellants."

and training), and the company President, Joe Escobedo. Escobedo's response to Zendejas's concerns was one of disinterest: Escobedo stated that he had hired Zendejas to deal with such problems.

Zendejas eventually contacted Kathy Wagner, the regional safety director at Coach, regarding his concerns about safety compliance. Wagner stated that Zendejas should not participate in violating the safety laws and requested his help to bring El Expreso into compliance with the regulations. Zendejas expressed concern that he would be terminated if he followed her instructions to ensure compliance with safety laws. Wagner reassured Zendejas that he would not be fired for complying with safety regulations. As a result of Zendejas's complaints, Wagner conducted an audit of El Expreso. Wagner discovered fairly substantial deviations from safety laws, including driver log fraud. As a result, Pedraza was reassigned to director of terminal operations.

Wagner continued to seek Zendejas's help in bringing El Expreso into compliance with safety laws. Zendejas repeatedly expressed concern that he would be fired if he ensured that drivers complied with safety regulations. Wagner again assured Zendejas that he would not be fired for doing so. With these assurances, Zendejas cancelled bus routes when eligible drivers were unavailable and sought outside sources to fulfill the need for drivers who were able to work within the safety regulations.

On June 11, 2001, Zendejas received a letter of reprimand recounting a 1997 episode in which he had disparaged a female co-worker and a June 6, 2001 incident in which he had disparaged several female co-workers. Nonetheless, on June 21, 2001, Zendejas was promoted to his former position, as director of charters and bus operations, which had been held previously by Pedraza.

Following the audit of El Expreso, tension mounted between Zendejas, on the one hand, and Pedraza and Escobedo, on the other. Zendejas reported on a weekly basis to Escobedo, who became angry when he reviewed Zendejas's reports and noticed that there were several route cancellations. Escobedo further complained that Zendejas had told Wagner too much. Pedraza also became irritated with Zendejas when Pedraza found out that bus runs had been cancelled. The relationship between Zendejas and Pedraza and Escobedo became more and more strained as Zendejas continued to seek outside drivers or to cancel bus runs.

On August 11, 2001, Zendejas called Wagner to address concerns that Escobedo had been pressuring him to fire two drivers for retaliatory purposes. Wagner told Zendejas not to fire the drivers, but to wait until she had investigated the matter. Zendejas expressed fear of termination if he failed to fire the drivers, but Wagner told him that she would not allow him to be terminated.

On August 21, 2001, Zendejas was notified that a bus driver had complained that another driver had committed safety violations. Zendejas was asked to keep the report confidential, but refused, and ultimately confronted the driver suspected of having violated the safety rules. On August 30, 2001, Escobedo asked Zendejas if he was aware of the complaints against the driver. When Zendejas replied that he was aware, Escobedo asked him what he planned to do about it. Zendejas replied that he was going to wait for the safety department to see if it could set up an investigation.

Later that month, the employee who had reported his fellow co-worker for safety violations complained to the di-

594

rector of safety that he had been exposed as the source of the complaint against his co-worker. Upon hearing this, the safety department informed Wagner that its investigation had been blown because Zendejas had approached the suspected driver. On September 6, 2001, Escobedo approached Zendejas and asked him if he had told the suspected driver who had reported him. Zendejas denied that he had done so. On September 12, 2001, Escobedo terminated Zendejas's employment.

### El Expreso and Coach's Appeal

#### A. Jury Charge

In their first issue, appellants contend that the trial court erred in submitting question one in the jury charge because, as a matter of law, the alleged agreement in question did not constitute an oral, modified term employment contract. Question one in the charge asked, "Did Coach USA and Robert Zendejas agree that Coach USA would not allow Robert Zendejas to be terminated for attempting to insure that El Expreso complied with safety laws?"

■ What constitutes an enforceable contract is a question of law for the trial court. *Gaede v. SK Investments Inc.*, 38 S.W.3d 753, 757 (Tex.App.-Houston [14th Dist.] 2001, pet. denied). This question of law is reviewed de novo and without deference to the lower court's conclusion. *Butler v. Arrow Mirror & Glass, Inc.*, 51 S.W.3d 787, 792 (Tex.App.-Houston [1st Dist.] 2001, no pet.).

■ Appellants argue that, because an employer's vague statements about its ability to terminate do not modify at-will status, the agreement in question does not constitute a modified employment agreement. Appellants contend that the agreement, as stated in the jury charge, was not

specific and definite enough to limit El Expreso's right to terminate Zendejas's employment. Zendejas contends that the agreement carved out a single exception to his at-will status and is sufficiently definite to constitute a modification of at-will status.

■ Absent a specific agreement to the contrary, the employer or the employee may terminate employment at will "for good cause, bad cause, or no cause at all." *Montgomery County Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex.1998). In order to modify the at-will status of an employment relationship, the employer must unequivocally indicate a definite intent to be bound not to terminate the employee under certain circumstances. *Id.* General, indefinite statements will not serve to limit an employer's right to discharge an employee. *Id.* Thus, an agreement to modify the at-will employment relationship must be "(1) expressed, rather than implied, and (2) clear and specific." *Miksch v. Exxon Corp.*, 979 S.W.2d 700, 703 (Tex.App.-Houston [14th Dist.] 1998, pet. denied). Likewise, an employer's oral statements may not modify an employee's at-will status unless there is a definite, stated intention to do so. *See Brown*, 965 S.W.2d at 501. The critical factor in determining the validity of an agreement to modify at-will status is whether an employer has " 'unequivocally indicated a definite intent to be bound not to terminate the employee except under clearly specified circumstances.' " *Miksch*, 979 S.W.2d at 705 (quoting *Brown*, 965 S.W.2d at 502).

Here, the agreement that formed the basis of jury question one was unequivocal and definite and showed an intent not to terminate Zendejas if he acted in clearly specified circumstances. We conclude that the agreement in the charge was not merely a general comment that Zendejas would not be terminated as long as his work was

satisfactory, as in *Brown*. *See Brown*, 965 S.W.2d at 502.

In *Miksch v. Exxon Corp.*, Miksch was employed as a secretary in the real estate division of Exxon's marketing department. *Id.*, 979 S.W.2d at 701. In 1987, her husband began investigating the possibility of leasing and operating a Chevron station. *Id.* Exxon had a written conflict-of-interest policy prohibiting an employee or the spouse of an employee from competing with Exxon. *Id.* Miksch allegedly spoke with her supervisor and asked him whether her husband's operation of a Chevron station would threaten her job. *Id.* at 702. The supervisor allegedly told Miksch that " 'it would not be a problem at all.' " *Id.* Thereafter, Miksch's husband leased the Chevron station. *Id.* In 1994, Exxon revised its conflicts policy, so that the policy provided that all conflicts had to be approved by a member of the company's senior management. *Id.* In that same year, Miksch's new supervisor informed her that she was in violation of the conflicts policy and that her husband would have to give up the Chevron station for her to keep her job. *Id.* When she and her husband refused, she was terminated. *Id.*

Miksch acknowledged that she was an at-will employee, but claimed that evidence existed to show that her supervisor's oral statements regarding the Chevron station had altered her at-will status. *Id.* at 703. The Fourteenth Court of Appeals held that the supreme court, in *Brown*, had "left open the possibility that such [verbal] statements *could*, under certain circumstances, be sufficient to create an enforceable agreement." *Id.* at 704. The court also held that the alleged statement by the supervisor did "not contain ambiguous terminology or require one to speculate as to the parameters of the parties' purported agreement." *Id.* at 705. Miksch's summary judgment evidence established that she had asked her employer whether her husband's plan to lease a Chevron station would jeopardize her employment. *Id.* Her summary judgment evidence showed that the supervisor's response was clear and definite and had communicated the clear message that Miksch would not be fired for her husband's leasing the Chevron station. *Id.*

As in *Miksch*, the agreement in this case set forth an express agreement between appellants and Zendejas that showed a clear and specific limitation on the right to terminate. The agreement did not contain ambiguous terminology or require speculation as to the parameters of the parties' purported agreement. *See id.* Rather, the agreement was based on a clear set of standards—that Zendejas would not be terminated for attempting to comply with federal and state safety laws.

Likewise, the record shows that Zendejas specifically expressed concern about whether he would be fired for attempting to bring El Expreso into compliance with safety laws. The record shows that a Coach employee, Zendejas's superior, responded specifically and definitely that Zendejas would not be terminated for doing so. Taken in the context of the entire case, the agreement between Zendejas and appellants communicated the clear message that Zendejas would not be fired for attempting to make El Expreso comply with a discrete set of applicable safety regulations. *See id.*

■ Appellants also contend that our holding that the agreement in this case created a modification provides employees with a vehicle to abuse their employment-at-will status. Specifically, appellants contend that, if the agreement in this case constitutes a modification, Zendejas could have acted in a completely unreasonable and unprofessional manner in ensuring El Expreso's compliance with safety regula-

tions without fear of termination. This contention is without merit. If an employee's at-will status is modified and an employee abuses that modification by wrongful conduct, an employer can terminate the employment based not on the modification, but on the employee's inappropriate conduct.

Moreover, this argument completely ignores the function of question two of the jury charge, which asked, "Was Robert Zendejas terminated for attempting to insure that El Expreso complied with safety laws?" By answering "yes" to question two, the jury determined that Zendejas had been terminated for attempting to ensure compliance with safety laws and not for other alleged wrongful conduct.

For these reasons, we hold that the trial court did not err in submitting question one to the jury. We overrule appellants' first issue.

## B. Legal and Factual Sufficiency

■ In their second and third issues, appellants contend that the trial court erred in denying their motions for directed verdict, for judgment notwithstanding the verdict, and for new trial because the evidence was legally and factually insufficient to support the existence and breach of an oral, modified term employment contract.

■ Under the no-evidence standard of review, the reviewing "court considers only the evidence and inferences tending to support the findings, disregarding the evidence and inferences contrary to the findings." *Orozco v. Orozco*, 917 S.W.2d 70, 73–74 (Tex.App.-San Antonio 1996, writ denied). If more than a scintilla of evidence supports the finding, the point of error must be overruled. *Id.* at 74. "More than a scintilla of evidence exists where the evidence supporting the finding, as a whole, 'rises to a level that would enable reasonable and fair-minded people

to differ in their conclusions.' " *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex.1995) (quoting *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 25 (Tex.1994)). When considering a factual-sufficiency point, the appellate court considers all of the evidence—both the evidence supporting, and the evidence undermining, the challenged findings. *See Orozco*, 917 S.W.2d at 74. Reversal is required only when the jury's finding is so contrary to the "great weight and preponderance of the evidence as to be manifestly unjust." *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986); *see Orozco*, 917 S.W.2d at 74.

Appellants first contend that there is no evidence of an oral agreement sufficiently precise and definite to meet the standards under *Brown*. However, the evidence reveals several instances between Zendejas and Wagner that support the finding that a modification to Zendejas's at-will status existed. On one occasion, after Zendejas and Wagner had discussed that El Expreso had to comply with safety regulations, Zendejas complained to Wagner that using the means that she had suggested (using outside sources, using sister companies, or cancelling runs) to ensure compliance would certainly lead to his being fired in retaliation. Zendejas testified that Wagner responded to his concern by stating, "We won't let that happen. From this point neither Mario nor Joe has the authority to hire or fire." Wagner also testified that she told Zendejas several times that he would not be fired for ensuring compliance with safety laws. Zendejas testified that he relied on Wagner's promise that she would not allow him to be fired for ensuring compliance with safety laws.

Appellants also contend (1) that Wagner's statements were not sufficiently clear to constitute a modification of Zendejas's

at-will status because she did not specifically state any exceptions to the company's right to fire Zendejas and (2) that Zendejas's testimony showed only that his efforts to comply with safety rules were part of his *ordinary job responsibilities*. Concerning the first contention, however, as the court in *Miksch* recognized, *Brown* does not "suggest that an employer must utter certain 'magic words' in order to agree to limit its right to terminate an at-will employee." *Miksch*, 979 S.W.2d at 707. Rather, the relevant determination is whether the employer's oral statement evidences a definite intent not to terminate the employee under clearly specified circumstances. *Id.* at 705. In this case, Wagner's statement is some evidence showing a clear intent to protect Zendejas from termination in the event that he ensured compliance with safety laws by using outside sources or sister companies or by cancelling runs. Because more than a scintilla of evidence exists that Zendejas's at-will status was modified, and because the jury's finding is not against the great weight and preponderance of the evidence, we hold that the evidence is legally and factually sufficient to support that finding.

Appellants also contend that the evidence is legally and factually insufficient to show that the agreement was supported by consideration because Zendejas was already required to take actions to ensure compliance with safety laws. Thus, appellants contend that Wagner's promise was merely one not to fire Zendejas for carrying out his already existing job duties. When all of the evidence is viewed in context, it is clear that Zendejas agreed to go beyond his assigned duties to ensure compliance with safety laws because of Wagner's assurances. Wagner's statements to Zendejas expanded his authority to comply with safety regulations by allowing him to use whatever means were necessary to ensure compliance, without fear of retaliatory termination.

Specifically, the evidence shows that, even against the warnings of his direct superiors, Zendejas took measures to bring El Expreso into compliance, including cancelling bus schedules, reporting violations, and hiring drivers from sister companies. Zendejas reported directly to Escobedo on a weekly basis. One week, when Zendejas had cancelled many bus runs, Escobedo stated, "You can't do this. We are going to go broke." On another occasion, Pedraza told Zendejas, "I want to tell you, don't be cancelling any of my runs." Despite being warned by Escobedo and Pedraza that he was to "make sure that if you use anybody you use our people," Zendejas continued to ensure compliance with safety laws by using other necessary means. Thus, Zendejas acted under the authority of Wagner to ensure safety compliance in exchange for not being terminated by his immediate supervisors, who had instructed him not to take such measures. Because more than a scintilla of evidence exists to show that consideration existed for the modification of Zendejas's at-will status, and because the finding is not against the great weight and preponderance of the evidence, the evidence is legally and factually sufficient to show that consideration existed for Zendejas's ensuring compliance with safety laws.

We overrule appellants' second and third issues.

### Zendejas's Appeal

Zendejas filed a separate notice of appeal and, in one issue, contends now that he is entitled to appellate attorney's fees as a matter of law. Zendejas contends that the trial court should have disregarded the jury's negative answer to the question on his appellate attorney's fees and

entered a judgment awarding those fees to him. Zendejas also contends that this Court should reform the judgment to include an award in the amount of $20,000 for his appellate attorney's fees in this Court and $30,000 for attorney's fees on petition to the Supreme Court of Texas.

Zendejas has not preserved this issue for appeal. To preserve this type of complaint, an appellant must make (1) a motion for directed verdict; (2) an objection to the submission of a jury question; (3) a motion for judgment notwithstanding the verdict; (4) a motion to disregard the jury's answer to a vital fact issue; or (5) a motion for new trial. *Aero Energy, Inc. v. Circle C Drilling Co.*, 699 S.W.2d 821, 822 (Tex.1985). Zendejas did not employ any of these preservation methods that could apply here. Thus, this challenge is waived on appeal. *See id.*

We overrule Zendejas's sole issue.

### Conclusion

We affirm the judgment of the trial court.