

## MEMORANDUM OPINION

No. 04-08-00146-CV

**WAL-MART STORES, INC.**, and Ed Garza, Individually and as Agent for Wal-Mart,
Appellants

v.

John Clyde **GUERRA**,
Appellee

From the 229th Judicial District Court, Starr County, Texas
Trial Court No. DC-04-86
Honorable Alex W. Gabert, Judge Presiding

Opinion by:      Karen Angelini, Justice

Sitting:         Catherine Stone, Chief Justice
                 Karen Angelini, Justice
                 Phylis J. Speedlin, Justice

Delivered and Filed:   July 1, 2009

REVERSED AND RENDERED

Appellants Wal-Mart Stores, Inc., and Ed Garza, individually and as agent for Wal-Mart,

appeal from a judgment in favor of appellee John Clyde Guerra, a former Wal-Mart employee.

Guerra sued Wal-Mart and Garza for breach of contract and intentional infliction of emotional

distress. A jury found in favor of Guerra on both claims and awarded Guerra over $2.5 million in

damages. On appeal, Wal-Mart and Garza challenge the legal sufficiency of the evidence to support

the jury's findings that Wal-Mart entered into an oral contract with Guerra to employ him for the duration of his working life, and that Wal-Mart and Garza intentionally inflicted severe emotional distress on Guerra.[1] Because we agree the evidence is legally insufficient to support both of Guerra's claims, we reverse and render judgment that Guerra take nothing.

### FACTUAL AND PROCEDURAL BACKGROUND

In 1993, Guerra applied for employment as a cashier at a Wal-Mart store. On the employment application, Guerra signed his initials to the following statement:

> I understand that this application is not a contract, offer, or promise of employment and that if hired I will be able to resign for any reason. Likewise, the company can terminate my employment at any time with or without cause. *I further understand that no one other than the President of Wal-Mart Stores, Inc. or Vice President of its People Division has the authority to enter into an employment contract or agreement with me, and that my at-will employment can be changed only by a written agreement signed by the President of Wal-Mart Stores, Inc.*

(emphasis added).

Guerra was hired to work as a cashier in the electronics department of a Wal-Mart store. When hired, Guerra was given a handbook outlining company policies and benefits. Upon receipt of the handbook, Guerra signed another acknowledgment which stated,

> [t]he stated policies and benefits are not intended to create nor be interpreted in any way as a contract between Wal-Mart and you unless otherwise advised in a written agreement signed by you and the President of the company or the Vice President of Wal-Mart's People Division. Your employment with Wal-Mart is on an "at-will" basis. This means you are free to terminate your employment at any time and that Wal-Mart equally reserves the right to terminate the employment relationship with or without good cause and without prior notice.

---

[1] Although appellants' brief also asserts the evidence is factually insufficient to support the jury's findings, we need not address these issues because they are unnecessary to the disposition of this appeal.

Over the next eight years, Guerra held various positions at several different Wal-Mart stores. In 2001, Guerra was promoted to store manager of the Rio Grande City Wal-Mart store. According to Guerra, immediately after his promotion was announced, he was told by a Wal-Mart regional director and two Wal-Mart vice-presidents[2] that as long as the store made a 4% profit over the preceding year and the store's shrinkage was kept under 1%, the Rio Grande City Wal-Mart store would be "for you for the rest of your life."

After Guerra served as store manager for sixteen months, Wal-Mart received a complaint from another Wal-Mart employee that Guerra was violating company policies by auctioning store merchandise to employees and engaging in other questionable practices with respect to store merchandise. After the complaint was made, Guerra's immediate supervisor, regional director Ed Garza, had a meeting with Guerra. Guerra claimed that during this meeting he was abruptly confronted with unfounded, uncorroborated, and uninvestigated allegations that he had stolen from Wal-Mart. Guerra denied the allegations. After conducting an investigation, Wal-Mart decided to demote Guerra to assistant store manager of another store. Guerra refused to take the demotion and stopped working for Wal-Mart.

Guerra then filed suit against Wal-Mart and Garza. In his amended petition, Guerra alleged Wal-Mart, acting by and through its agents, had made an oral agreement to employ him for the rest of his working life, as long as the Rio Grande store met certain performance goals each year. Guerra alleged he met these performance goals, and therefore, Wal-Mart breached its employment contract

---

[2] It is undisputed that neither of these individuals was the Vice President of Wal-Mart's People Division.

with him. Additionally, Guerra alleged the initial misconduct complaint was mishandled by Garza, giving rise to Guerra's claim for intentional infliction of emotional distress.

In answer to Guerra's suit, Wal-Mart and Garza denied Guerra's allegations and raised various defenses. First, Wal-Mart and Garza alleged there was no agreement to modify Guerra's at-will employment status. Second, Wal-Mart and Garza alleged that even if there was an agreement to modify Guerra's at-will employment status, it was not binding on Wal-Mart because it was not within the scope of the authority of any agent. Third, Wal-Mart and Garza alleged that even if there was an agreement, it was unenforceable because it was an oral agreement barred by the statute of frauds, and it lacked the consideration required for a lifetime employment contract.

The case was tried to a jury. At trial, the evidence showed that Guerra was hired as an at-will employee in 1993, and was notified of his at-will employment status and that any modification to his employment status had to be in writing and signed by a particular officer. In 2001, Guerra applied for and interviewed for a store manager position. Guerra was informed of his promotion to store manager at a "year-end" meeting held in July or August of 2001 and attended by thousands of Wal-Mart managers. At the meeting, Wal-Mart Regional Vice President Mike Moore and Wal-Mart Divisional Vice President Larry Williams announced Guerra's promotion to manager of Wal-Mart's Rio Grande City store. Wal-Mart District Manager Will Tippens and Moore had recommended Guerra for the position, and Williams had approved the promotion. Guerra, who grew up in a nearby city, was pleased to be given the opportunity to manage the Rio Grande City store.

After his promotion was announced, Guerra approached Tippens, Moore, and Williams to thank them for the promotion and to discuss his goals for the Rio Grande City store. One of Guerra's

goals was to earn a bonus for the store employees, which was achieved by meeting certain store performance goals. Guerra testified that he and Moore then had the following conversation:

> [Moore said:] "Well I tell you what, if you make, if you meet a 4 percent over last years net, every year, which qualifies you for the bonus, and you go under 1 percent in shrink after the year is over, that store can be there it's for you for the rest of your life." I said, what? He says "Yes for as long as you want to be there, that's your baby as long as you make the numbers..."

[sic passim].

> According to Guerra's testimony, Williams and Tippens then said:

> And, Mr. Larry Williams said, "I vouch for that," he says, "You make your numbers, you're there," and then Will Tippens says, "And I ... second you," you know like, so then they gave me a date to report which was like two weeks later on.

[sic passim].

Guerra started as store manager on September 1, 2001. A week or two later, Williams and Tippens visited the Rio Grande City store. Guerra testified he had the following conversation with Tippens and Williams:

> [Tippens] says "You know what, this store looks darn good," he says "Your sales are up," he says, uh, "You are still committing to what you told me over there," I said "yes, sir, they are up there and I had 10 commitments placed on the hallways and the number one was to get the bonus, stay up in sales, do shrink, you know, on and on. He says "Well, and I still say I still repeat myself as long as you make your numbers," he says, "You can be here for the rest of your life or wherever you choose to." I said okay. And Larry Williams again just said, "That's the same for you," and they left.

[sic passim]. At the conclusion of his testimony, Guerra characterized the agreement as follows, "The agreement was as long as I met my numbers...I was guaranteed to be there at that store."

Tippens, Moore, and Williams also testified at trial. They each denied making the statements Guerra attributed to them and they denied entering into any employment contract with Guerra.

Additionally, Tippens, Moore, and Williams, and other Wal-Mart employees testified that they did not know of anyone who had an employment contract at Wal-Mart. Guerra, too, testified that he knew of no other Wal-Mart employee who had an employment contract.

After the evidence was presented, Wal-Mart and Garza moved for directed verdict on both claims. The motion was denied, and the following issue was submitted to the jury,

> Did John Clyde Guerra and Wal-Mart agree that John Clyde Guerra would be employed as manager of the Rio Grande City Store so long as John Clyde Guerra met the specific requirement of a 4% net profit over the previous year and shrinkage of less than 1% so that his position as store manager would continue from year to year for the duration of his working life?

The jury answered "Yes." The jury also found that Wal-Mart and Garza breached the employment contract with Guerra and that Wal-Mart and Garza intentionally inflicted emotional distress on Guerra and awarded damages. In conformity with the jury's verdict, judgment was entered against Wal-Mart in the amount of $2,372,306.14 and against Garza in the amount of $171,059.40. These amounts included prejudgment interest and attorney's fees. Wal-Mart and Garza then instituted this appeal.

### STANDARD OF REVIEW

In reviewing a legal sufficiency challenge, we determine whether the evidence as a whole rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We will sustain a no-evidence point if a finding is not supported by anything more than a scintilla of evidence. *Siller v. LPP Mortg., Ltd.,* 264 S.W.3d 324, 328 (Tex. App.—San Antonio 2008, no. pet.). In making this determination, we view the evidence in the light most favorable to the verdict, crediting favorable evidence if

reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *City of Keller*, 168 S.W.3d at 827. Evidence is legally insufficient when the record discloses (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Id*. at 810.

### BREACH OF CONTRACT

As to Guerra's breach of contract claim, Wal-Mart and Garza challenge the jury's finding of an oral employment agreement that modified Guerra's at-will employment status. Specifically, Wal-Mart and Garza argue Guerra did not establish the existence of an employment contract because (1) the oral statements made to Guerra did not, as a matter of law, unequivocally indicate a definite intent by Wal-Mart to modify Guerra's at-will employment status; (2) there was no evidence that any of the Wal-Mart officers who made the oral statements to Guerra had authority to bind Wal-Mart to a contract for lifetime employment; (3) any such oral agreement was barred by the statute of frauds; and (4) any such oral agreement was unenforceable because it was supported by insufficient consideration. Alternatively, Wal-Mart and Garza argue that even if Guerra established the existence of an employment contract, Wal-Mart was justified in breaching the contract because the record contains conclusive evidence that it had good cause to demote or terminate Guerra.

**1. Definite Intent to Modify At-Will Employment Status**

The general rule in Texas, and in most states, is that absent a specific agreement to the contrary, employment may be terminated by the employer or the employee at will, for good cause,

bad cause, or no cause at all. *Montgomery County Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex. 1998) (holding an employer's oral statements did not modify an employee's at-will status absent a definite, stated intention to the contrary). Such at-will employment, however, may become contractual based on oral statements of those in authority. *Gilmartin v. Corpus Christi Broad. Co.*, 985 S.W.2d 553, 555 (Tex. App.—San Antonio 1998, no pet.). For such a contract to exist, the employer must unequivocally indicate a definite intent to be bound not to terminate the employee except under clearly specified circumstances. *Midland Judicial Dist. Cmty. Supervision and Corr. Dept. v. Jones*, 92 S.W.3d 486, 488 (Tex. 2002); *Montgomery County*, 965 S.W.2d at 502. To determine if particular oral statements manifest the required intent, courts consider both the context in which the statements were made and the language employed. *See El Expreso, Inc. v. Zendejas*, 193 S.W.3d 590, 597 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (holding that in the context of the entire case, supervisor's statements that employee would not be fired for attempting to make the company comply with applicable safety regulations were legally and factually sufficient to modify the employee's at-will status); *Miksch v. Exxon, Corp.*, 979 S.W.2d 700, 705 (Tex. App.—Houston [14th Dist.] 1998, pet. denied) (noting that employer's statement to employee did not contain ambiguous terminology or require speculation about the parameters of the parties' alleged agreement, and therefore, the employer's statement was not, as a matter of law, insufficient to modify the employee's at-will status).

General comments that an employee will not be discharged as long as his work is satisfactory do not in themselves manifest an intent to modify an employee's at-will status. *Montgomery County*, 965 S.W.2d at 502. Similarly, statements that an employee will be discharged only for "good reason"

or "good cause" do not manifest such an intent when there is no agreement on what those terms encompass. *Id*. An employee who has no formal agreement with his employer cannot construct one out of indefinite comments, encouragements, or assurances. *Id*. Without such an agreement, the employee cannot reasonably expect to limit the employer's right to terminate him. *Id*. As the supreme court recognized in *Montgomery County*,

> Courts "must distinguish between carefully developed employer representations upon which an employee may justifiably rely, and general platitudes, vague assurances, praise, and indefinite promises of permanent continued employment." Only when the promises are definite and, thus, of the sort which may be reasonably or justifiably relied on by the employee, will a contract claim be viable, not when the employee relies on only vague assurances that no reasonable person would justifiably rely upon. There is, thus, an objective component to the nature of such a contract claim in the form of definite and specific promises by the employer sufficient to substantively restrict the reasons for termination.

*Id*. at 503 (quoting *Hayes v. Eateries, Inc.*, 905 P.2d 778, 783 (Okla. 1995) (citations omitted)).

At trial, Guerra relied exclusively on the oral statements of Tippens, Moore, and Williams to establish the existence of an employment contract. On appeal, Wal-Mart and Garza challenge the jury's finding of the existence of an employment contract, arguing there is no evidence Wal-Mart had a definite intent to modify Guerra's employment status. In conducting a legal sufficiency review, we must view the evidence in the light most favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *City of Keller*, 168 S.W.3d at 827. Applying this standard, we must accept that Tippens, Moore, and Williams made the oral statements attributed to them in Guerra's trial testimony. Then, we must examine the oral statements made by Tippens, Moore, and Williams, and determine if the oral statements comprise more than a mere scintilla of evidence of an employment contract.

In *Gilmartin*, we applied the standards set out in *Montgomery County* and concluded the employer's oral statements were insufficient to modify an employee's at-will employment. 985 S.W.2d at 556. In *Gilmartin*, the employee was told when he was hired that he would work from year to year under the contract, and the contract would be automatically renewed for successive one-year terms, so long as his work was satisfactory. *Id*. The employee was also told that a commitment by the employer for one to three years was "very doable." *Id*. After working for a little over a year, the employee was terminated and he sued his employer for breach of contract. *Id*. at 554-55. The trial court granted summary judgment in favor of the employer, and the employee appealed. *Id*. In affirming the granting of summary judgment, we held the evidence presented did not show that the employer manifested a definite intent not to terminate the employee because the standard set out in *Montgomery County* required a more formal agreement. *Id*. at 556. Thus, we concluded the employer's oral statements did not, as a matter of law, modify the employee's at-will employment to a specific contractual arrangement. *See id*.

Under different circumstances, the Fourteenth Court held an employer's oral statements were not insufficient to modify the employee's at-will status as a matter of law and reversed a summary judgment in favor of the employer. *Miskch*, 979 S.W.2d at 705. There, the employee was concerned that her husband's decision to open a competing gas station would violate her employer's non-competition policy. *Id*. at 702. The employee went to her supervisor and asked him if such action by her husband could result in her termination. *Id*. The supervisor stated it would not. *Id*. When the employee was later fired for violating the non-competition policy, the employee sued the employer, claiming that her supervisor had orally agreed that her husband's operation of a gas station would

not be grounds for termination. *Id.* In holding the supervisor's oral statements were not insufficient to modify the employee's at-will status as a matter of law, the appellate court reasoned that the employee went to her supervisor with a serious question, and the supervisor's response was specific and definite, communicating a clear message the employee would not be fired for what would ordinarily have violated company policy. *Id*. at 705. The appellate court further recognized that the oral statement made to the employee by her supervisor had no ambiguous terminology, and the employer did not have a standing policy requiring employment contracts to be in writing and signed by a particular officer. *Id*. at 704-706.

Similarly, in *Zendejas*, the First Court held the evidence was legally and factually sufficient to support the existence of an oral employment contract modifying the employee's at-will status. 193 S.W.3d at 597. In *Zendejas*, the employee went to his supervisor with concerns that he would be fired for attempting to bring the company into compliance with specific safety laws. *Id*. 593. The supervisor responded specifically and definitely that the employee would not be terminated for doing so. *Id*. The appellate court concluded that in the context of the entire case, the oral statements made by the supervisor communicated the clear message that the employee would not be fired for attempting to make the company comply with a specific set of applicable safety regulations. *Id*. at 595-57.

Unlike the oral statements in *Miskch* and *Zendejas*, the oral statements here were not made in the context of a serious inquiry about the employee's possible termination, or in the context of a formal discussion about the terms of employment. The first set of statements, made at a public meeting with thousands of other employees in the room, was prompted by Guerra explaining his

goals for the store and expressing gratitude for the chance to manage the Wal-Mart store near his hometown. In fact, when viewed in this context, these statements are mere assurances that Guerra would not be transferred from the Rio Grande City store to another store. The second set of statements, made after Guerra began working as store manager, was prompted by performance goals Guerra had posted on the walls. Williams observed the posted goals, and stated that if the Rio Grande City store made these "numbers," Guerra could be at the Rio Grande City store for the rest of his life, or wherever he chose to be. The record, however, does not contain any evidence reflecting the various performance goals referenced by Williams in his statement.

Guerra argues he established a clear and specific agreement to modify his at-will employment status because some of the oral statements mention specific performance criteria—a four percent increase in profits and under one percent in shrinkage. But the fact that some of the oral statements mention specific performance criteria is not enough.[3] The oral statements in this case are lacking on a more fundamental level: the statements do not expressly mention modifying Guerra's at-will status; nor do the statements expressly mention Wal-Mart limiting its right to terminate Guerra's employment. Additionally, the statements do not expressly mention any specific circumstances under which Guerra might still be terminated.

---

[3] In fact, a comparison of the oral statements reveals that even these terms lack clarity. In the initial statements made at the year-end meeting, Moore mentions specific percentages—"if you meet a 4 percent over last year[']s net, every year, which qualifies you for the bonus, and you go under 1 percent in shrink after the year is over, that store can be there it's for you for the rest of your life." In the later statements made at the Rio Grande City store, Tippens refers to a vague set of performance criteria—"as long as you make your numbers"..."[y]ou can be here for the rest of your life or wherever you choose to."

In sum, the statements made by Tippens, Moore, and Williams require speculation about the most fundamental terms of the purported agreement. Consequently, the statements fail to show Tippens, Moore, and Williams unequivocally indicated a definite intent to be bound not to terminate Guerra. After analyzing the statements made by Tippens, Moore, and Williams, we conclude they did not modify the employee's at-will employment to a specific contractual arrangement. *See Montgomery County*, 965 S.W.2d at 501-503 (holding oral assurances to employee that she would not be fired as long as she was doing her job and she would not be fired unless there was good cause were too indefinite to constitute an agreement limiting the employer's right to discharge the employee); *Runge v. Raytheon E-Systems, Inc.*, 57 S.W.3d 562, 566 (Tex. App.—Waco 2001, no pet.) (holding supervisor's comments that employee had an "opportunity of a lifetime" and a "job for life" were not specific enough to alter the at-will employment relationship). Accordingly, the statements made by Tippens, Moore, and Williams fail to comprise more than a mere scintilla of evidence of an employment contract.

**2. Authority to Bind Wal-Mart to an Employment Contract**

Wal-Mart and Garza also argue the evidence is legally insufficient to support the jury's finding of the existence of an employment contract because Tippens, Moore, and Williams lacked the authority to enter into a binding contract on Wal-Mart's behalf. The issue of Tippens's, Moore's, and Williams's authority to contract on Wal-Mart's behalf was presented to the jury. The jury was instructed that in deciding whether the parties reached an agreement, it could consider what the parties said and did in light of the circumstances, including any other earlier course of dealing. The

jury was further instructed that a party's conduct includes the conduct of another who acts with the party's authority or apparent authority.

The law does not presume agency. *Disney Enter., Inc. v. Esprit Finance, Inc.*, 981 S.W.2d 25, 30 (Tex. App.—San Antonio 1998, pet. dism'd w.o.j.). Absent actual or apparent authority, an agent cannot bind a principal. *Suarez v. Jordan*, 35 S.W.3d 268, 272-73 (Tex. App.—Houston [14th Dist.] 2000, no pet.). Actual authority denotes that authority which the principal intentionally confers upon the agent, or intentionally allows the agent to believe he has, or by want of ordinary care allows the agent to believe himself to possess. *Id.* at 273. Apparent authority is the power of an agent to affect the legal relations of another person by transactions with third persons. *Ames v. Great S. Bank*, 672 S.W.2d 447, 450 (Tex. 1984) (citing RESTATEMENT (SECOND) OF AGENCY § 8 (1958)). Apparent authority arises through acts of participation, knowledge, or acquiescence by the principal which clothe the agent with the indicia of apparent authority. *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 672 (Tex. 1998).

A contract for lifetime employment is an extraordinary contract not usually made in the ordinary course of business. *Brown v. Grayson Enter., Inc.*, 401 S.W.2d 653, 657 (Tex. Civ. App.—Dallas 1966, writ ref'd n.r.e). Consequently, when evaluating an agent's authority to make a binding contract for lifetime employment, courts scrutinize the evidence presented. *See Nelms v. A & A Liquor Stores, Inc.*, 445 S.W.2d 256, 259-60 (Tex. Civ. App.—Eastland 1969, writ ref'd n.r.e.) (holding that an oral agreement for lifetime employment between employee and the president of a corporation was not binding because it was not within the express, implied, or apparent authority

of the president); *Brown*, 401 S.W.2d at 657-58 (concluding that in the absence of express authority corporate officers and agents lacked the power and authority to hire employees for life).

On appeal, Guerra acknowledges Tippens, Moore, and Williams lacked actual authority to contract with Guerra on Wal-Mart's behalf. However, Guerra contends that Tippens, Moore, and Williams possessed apparent authority to contract with Guerra on Wal-Mart's behalf. We agree that nothing in the record shows that Tippens, Moore, and Williams had actual authority to enter into an employment contract on Wal-Mart's behalf. The only issue is whether there is evidence to support the jury's implied finding that Tippens, Moore, and Williams had apparent authority to bind Wal-Mart to an employment contract.

Certain limitations apply in determining whether apparent authority exists. *Lifshutz v. Lifshutz*, 199 S.W.3d 9, 22 (Tex. App.—San Antonio 2006, pet. denied); *Humble Nat'l Bank v. DCV, Inc.*, 933 S.W.2d 224, 237 (Tex. App.—Houston [14th Dist.] 1996, writ denied). First, apparent authority is determined by looking at the acts of the principal and ascertaining whether those acts would lead a reasonably prudent person using diligence and discretion to suppose the agent had the authority to act on behalf of the principal. *Lifshutz*, 199 S.W.3d at 22; *Humble*, 933 S.W.2d at 237. Only the actions of the principal may be considered; representations of authority made by the agent have no effect. *Lifshutz*, 199 S.W.3d at 22-23; *Humble*, 933 S.W.2d at 237. Second, the principal must either have affirmatively held out the agent as possessing the authority, or the principal must have knowingly and voluntarily permitted the agent to act in an unauthorized manner. *Lifshutz*, 199 S.W.3d at 23; *Humble*, 933 S.W.2d at 237. Finally, a party dealing with an agent must ascertain both the fact and the scope of the agent's authority, and if the party deals with the agent without having made such a

determination, he does so at his own risk. *Lifshutz*, 199 S.W.3d at 23; *Humble*, 933 S.W.2d at 237. Apparent authority is not available when the other contracting party has notice of the limitations of the agent's power. *Humble*, 933 S.W.2d at 238.

On appeal, Guerra argues it was reasonable for him to believe that Moore, Tippens, and Williams had the authority to make a lifetime employment contract because they had made other employment and personnel decisions in the past which were ratified by Wal-Mart. As support for this argument, Guerra points to evidence that Tippens and Moore recommended Guerra for the store manager position, and Williams approved Guerra's promotion. Guerra also points to evidence that Wal-Mart's President and Vice-President of the People Division did not approve his promotion to store manager or any of his previous promotions.

To determine if the evidence is legally sufficient to support the jury's apparent authority finding, we must evaluate the record in light of all three elements of apparent authority. Here, the record shows Guerra received written notice, through his employment application and employee handbook, that only the President of Wal-Mart or the Vice President of the Wal-Mart's People Division had authority to enter into a contract modifying his at-will employment status. The record also shows that some employment decisions were made by Tippens, Moore, and Williams; however, these decisions were limited in scope: Wal-Mart authorized Tippens and Moore to make certain recommendations with respect to promotions, and authorized Williams to review and approve these recommendations. However, there is no evidence in the record that Wal-Mart allowed Williams, Moore, and Tippens to enter into an employment contract to modify the at-will status of Guerra or any other employee. Nor is there any evidence that Tippens, Williams, and Moore ever entered into

any other type of contract on behalf of Wal-Mart. Finally, there is no evidence in the record that Guerra made any effort to confirm the fact and scope of Tippen's, Moore's, and Williams's authority to make a lifetime employment contract.

We conclude the record does not contain any acts by Wal-Mart from which a reasonable person could believe that Wal-Mart authorized Tippens, Moore, and Williams to enter into any contract on its behalf, much less an extraordinary lifetime employment contract. We further conclude the record does not show that Wal-Mart held out Tippens, Moore, and Williams as having the authority to enter into an employment contract on behalf of Wal-Mart, nor does the record show Wal-Mart acted negligently in allowing Tippens, Moore, and Williams to engage in similar conduct in the past. Based on this record, the evidence is legally insufficient to support the jury's implied finding of apparent authority. We, therefore, conclude the evidence is legally insufficient to support the jury's finding of the existence of an employment contract between Wal-Mart and Guerra.

Because the evidence is legally insufficient to support the jury's contract finding, we need not address Wal-Mart's and Garza's remaining breach of contract arguments.

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

According to Wal-Mart and Garza, the evidence is legally insufficient to support the jury's finding that Wal-Mart and Garza intentionally inflicted emotional distress on Guerra. We agree.

The elements of the cause of action of intentional infliction of emotional distress are (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the actions of the defendant caused the plaintiff emotional distress; and (4) the emotional distress suffered by the plaintiff was severe. *Texas Farm Bureau Mut. Ins. Co. v. Sears*, 84 S.W.3d 604, 610

(Tex. 2002). Extreme and outrageous conduct is conduct so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society. *Id*. Texas has adopted a strict approach to intentional infliction of emotional distress claims arising in the workplace. *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 612-13 (Tex. 1999) (holding supervisor's ongoing acts of harassment, intimidation, and humiliation, and daily obscene and vulgar behavior went beyond the bounds of tolerable work behavior and were within the realm of extreme and outrageous conduct). While an employer's conduct in the workplace may sometimes be unpleasant for the employee, the employer must have some discretion to supervise, review, criticize, demote, transfer, and discipline its workers. *Sears*, 84 S.W.3d at 611. Thus, Texas courts decline to recognize intentional infliction of distress claims for ordinary employment disputes, recognizing that extreme conduct in this context exists only in the most unusual circumstances. *Id*.

Here, Guerra's intentional infliction of emotional distress claim focused on Garza's conduct at a meeting held shortly after Wal-Mart received the complaint against Guerra. According to Guerra, Garza's conduct was extreme and outrageous because Guerra was "lured" into Garza's office in the guise of a business meeting, and then, in violation of well-established company policy, was confronted with an unfounded, uncorroborated and uninvestigated allegation that he had stolen from Wal-Mart.

At trial, the evidence showed that Garza telephoned Guerra, and told Guerra to come to Garza's office for a meeting the following day. Garza, who was Guerra's supervisor, did not tell Guerra the purpose of the meeting, but Guerra assumed the purpose of the meeting was to discuss the Rio Grande City store's sales and profits. Before attending the meeting, Guerra learned that Felipe

Garcia, the Rio Grande City store's loss prevention specialist, was also scheduled to meet with Garza. Only Garza, Guerra, and Corey Gonzalez, the district's loss prevention specialist, were present at the meeting which took place in a small, private office.

Garza started the meeting by saying, "Look, I am going to ask you some questions and I want you to be honest." Then Garza stated, "Well I had an anonymous caller call me, told me they saw you putting merchandise, you and Felipe Garcia putting merchandise in a vehicle." Guerra responded to Garza's inquiry by acknowledging that he and Garcia "always [did] that." Gonzalez then informed Garza that Guerra was the only store manager who personally handled the store's merchandise transfers, along with the store's loss prevention specialist, Garcia. Garza then said that this was not what he was talking about, and again asked Guerra, "What merchandise did you take from the store that didn't belong to you and put in the vehicle?" Guerra then replied that he didn't "have to steal from nobody." Garza then said, "I am not telling you that you are stealing." Guerra insisted that Garza was in fact accusing him of stealing, became upset, and told Garza "don't ever accuse me of stealing." Guerra testified he could tell by Garza's face that Garza realized he had "screwed up" by making this accusation. Guerra felt Garza should apologize to him for making a false accusation and requested an apology from Garza. Garza did not apologize. The next day Gonzalez, who was a personal friend of Guerra's, called Guerra and apologized for what happened in the meeting the day before.

Assuming, as we must, that Guerra's testimony accurately depicts the meeting with Garza, we are of the opinion that Garza's actions were well within the bounds of decent behavior. Employers are allowed some leeway in investigating serious accusations made against their employees. *Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 741 (Tex. 2003). Although Garza's conduct in discussing

-19-

the allegations with Guerra was obviously unpleasant for Guerra, it could not be characterized as extreme and outrageous behavior. *See Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995) (determining that investigation of employee's alleged theft was not extreme and outrageous even though employer questioned employee in a severe tone, did not explain the facts, and asked employee how she could have neglected to pay for the alleged stolen item when she paid for other groceries); *Diamond Shamrock Refining and Marketing Co. v. Mendez*, 844 S.W.2d 198, 202 (Tex. 1992) ("Mendez argues that Diamond Shamrock's tortious conduct occurred not by terminating him, but by falsely depicting him in the community as a thief. Even if Mendez's charges are taken as true, however, this conduct is not sufficiently outrageous to raise a fact issue.").

After viewing the evidence in the light most favorable to the verdict, we conclude there was no evidence that Garza's conduct was extreme and outrageous and beyond all possible bounds of decency. Having concluded the evidence was legally insufficient to support one element of Guerra's intentional infliction of emotional distress claim, we need not address Wal-Mart's arguments concerning the legal sufficiency of the evidence to support the other elements of this claim. *See* TEX. R. APP. P. 47.1 (providing appellate court opinions must be "as brief as practicable" but address "every issue raised and necessary to final disposition of the appeal.").

## CONCLUSION

In the absence of evidence of an employment contract, Guerra was not authorized to recover on his breach of contract claim. In the absence of evidence that Garza and Wal-Mart engaged in extreme and outrageous conduct, Guerra was not authorized to recover on his intentional infliction

of emotional distress claim. For these reasons, we reverse the trial court's judgment and render judgment that Guerra take nothing.


Karen Angelini, Justice